HUGH WHITE v. LEEDS IMPORTING COMPANY and Others.

May 25, 1898.

Nos. 10,987—(109).

**Action to Set Aside Execution Sale—Inadequate Price—Defect in Notice—Redemption by Junior Mortgagee.**

A tract of land was subject to three liens which attached in the following order: (1) A judgment; (2) a mortgage to W.; and (3) a mortgage to P. The land was sold on an execution on the judgment, and the evidence of the sale placed on record. W. knew of the first lien, but, relying on the false and fraudulent representations of his mortgagor that it had been paid and satisfied, he made no investigation of the records, and did not discover that the land had been sold on execution until after the period of redemption. P., as mortgagee, redeemed from the sale. In an action by W. to set aside the execution sale on the ground of the inadequacy of the price bid at the sale, a defect in the notice of sale given by the sheriff, and the fraud of the mortgagor, *held*, that he was not entitled to such relief even upon condition of refunding to P. what he had paid to redeem; that P., as such redemptioner, was a bona fide purchaser for value, and could not be deprived of the property rights which he had acquired under the redemption.

**Same—Redemptioner a Good-Faith Purchaser.**

The fact that P. knew, or was chargeable with notice of, the defect in the notice of sale, and that the amount for which the property was bid off (the amount of the judgment) was greatly less than the value of the land, did not deprive him of the character of a bona fide purchaser.

Appeal by defendant F. J. Porter and others from an order of the district court for Nobles county, P. E. Brown, J., denying a motion for a new trial. The facts are stated in the opinion. Reversed.

*J. A. Town* and *Lorin Cray*, for appellants.

*E. H. Canfield*, for respondent.

MITCHELL, J.

The Leeds Importing Company was an Iowa corporation, consisting of only two members,—Goodenough, its president, and Cooper, its secretary and treasurer. It owned a tract of 157½ acres of land, worth from $17 to $18 per acre. In February, 1894, one Heron commenced an action for the recovery of money against the company, in which an attachment was issued and levied on this land. On March 31, 1894, the company executed a mortgage on the land to the plaintiff to secure the payment of $1,738. This mortgage was duly recorded on April 2. At the time of the execution of this mortgage, plaintiff was informed of the existence of the attachment; but the secretary of the company told him not to give himself any uneasiness about it, that it would never bother him, that they would pay it off. On May 5, 1894, the company gave a second mortgage (in form a deed) on the same land to one Porter, to secure the payment of $15,000 which it owed to him individually, or to a firm of which he was a member. This mortgage was also duly recorded.

On November 19, 1894, Heron obtained and docketed a judgment for $199.09 against the company in the action in which the attachment had been issued and levied. This was the first lien on the land, plaintiff's mortgage being the second, and Porter's the third. Execution on Heron's judgment having issued on November 28, 1894, the sheriff advertised the land for sale on January 12, 1894,— an impossible date. On January 12, 1895, the land was bid off at the execution sale for $180, by the son of Heron's attorney. A certificate of sale was executed and duly recorded. On the 17th of the same month, the purchaser at the execution sale assigned his certificate of sale to Cooper's wife. This assignment was placed on record. While Cooper transacted the business in the name of

his wife, the evidence is plenary that his wife was a mere figure-head in the transaction, and that Cooper himself was the real purchaser of, and paid the consideration for, the assignment. In an interview between plaintiff and Cooper about November 1, 1895, the court finds that

"Plaintiff was fraudulently advised by said Cooper, who then had in view the obtaining of this land for himself, that said claim of said Heron had been settled and paid, which statement said plaintiff believed and relied on."

The evidence justified this finding.

Defendant claims that the evidence shows that plaintiff had actual knowledge of the sale on Heron's execution prior to the expiration of the period of redemption. We do not think the evidence is such as to require a finding to that effect. On the contrary, it justifies the finding that he had no such knowledge until after the expiration of the redemption period, and just before the commencement of this action. On January 6, 1896, Porter duly filed his intention as mortgagee and creditor to redeem from the execution sale; and on January 16 he did so redeem, by paying $194.75 to the sheriff, who executed to him a certificate of redemption. Shortly afterwards the plaintiff commenced this action to have the sale on the Heron execution set aside, and to foreclose his mortgage, tendering to Porter payment of the amount, with interest, which the latter had paid to redeem. The trial court granted him the relief prayed for; and, from an order denying a new trial, Porter and the other defendants beneficially interested in his mortgage appealed.

Had there been no redemption, and had the legal title under the execution sale become absolute in Mrs. Cooper, a court would make short work of this case; for Cooper's conduct indicates a fraudulent scheme on his part to cut out both plaintiff's and Porter's mortgages, and to obtain the land for himself, in the name of his wife, for about a fourteenth or a fifteenth of its value. But Porter's redemption has had the effect of defeating this scheme, and the contest is now between him and the plaintiff; the question being whether Porter should be permitted to hold the land for his

debt, which now amounts to about $17,000, or whether the execution sale should be set aside, and matters placed in statu quo, so that plaintiff's mortgage, on which there is now due over $2,200, would again become a first lien, and Porter's mortgage a second lien, on his being reimbursed for what he paid out to redeem from the Heron lien, which was prior to those of both plaintiff and Porter.

Plaintiff, as the ground for setting aside the execution sale, relies on the inadequacy of the price for which the land was sold, the defect in the notice of sale, and the fraud practiced upon him by Cooper. His counsel seems to argue the case as if, in case the sale is not set aside, Porter would get the land for the paltry sum which he paid to redeem. This is not so. The redemption extinguishes and pays his mortgage debt to the amount of the value of the land, less what he paid to redeem. Sprague v. Martin, 29 Minn. 226, 13 N. W. 34.

Porter was not a party to, and had no notice of, the fraud perpetrated on plaintiff by Cooper. It must be presumed that he knew of the discrepancy between the value of the land and the amount for which it sold on the Heron execution; but this is not of itself suggestive of any fraud, for in this state, where both the owner and lien creditors are allowed a year in which to redeem, the amount bid at either an execution or a mortgage sale is usually determined by the amount of the creditor's claim, and not by the value of the property. This disparity between the value of the land and the amount bid constitutes the main reason why Porter should redeem.

He was also charged by the records with constructive notice of the defect in the sheriff's notice of sale; but this was not very suggestive, in view of the statute providing that an officer's selling without giving the prescribed notice does not affect the validity of the sale, "either as to third parties, or parties to the action." G. S. 1894, § 5467.

The record also charged him with constructive notice that Wilson (and not the judgment debtor) had purchased at the sale, and subsequently assigned the certificate to Mrs. Cooper. But the same records which charged him with constructive notice of all these facts charged plaintiff with like notice of the same facts.

There is no evidence that he knew or had any reasonable ground for believing that plaintiff had no actual notice of these facts, or had been misled by any fraudulent representation by Cooper. On the contrary, he had a right to assume that plaintiff knew all the facts, but for some good reason did not desire to redeem. Porter was not plaintiff's guardian, and owed him no duty to look after his interests.

The situation was just this: The records disclosed a presumptively valid sale on a lien paramount to those of both himself and plaintiff. If there was no redemption, presumptively the liens of both mortgages would be extinguished. He was not required, and could not afford, to refrain from redeeming, and take the chances of the sale being set aside for some possible cause to him unknown. He did what he had a perfect legal right to do, and the only thing he could do under the circumstances, viz. file notice of his intention to redeem, and in due time redeem; there being no redemption by either the owner or the plaintiff. As such redemptioner, he became an innocent purchaser for value; and we discover no legal principle upon which he can be deprived of any of his property rights which he has acquired under his redemption.

Order reversed.

An application for a rehearing having been made, the following opinion was filed on June 17, 1898:

PER CURIAM.

The gist of counsel's application for a reargument is that the court based its decision upon the proposition that Porter, as redemptioner, was an innocent purchaser, whereas the burden was on him to prove that fact, and there was no evidence that he did not know of Cooper's fraud on plaintiff.

If this were the case of a purchaser by convention of the parties, there might be something in the point. But a redemptioner does not occupy in all respects the position of an ordinary purchaser. He is exercising a statutory right, and if he does not exercise it in the manner and at the time prescribed by statute the right is gone forever. Had Porter known of facts which might render the execution sale voidable at the suit of plaintiff, he would not have been

bound to refrain from redeeming, and hazard his right of redemption upon the chance that plaintiff would bring such a suit and prosecute it to a successful termination.   As suggested in the opinion, he had a right to assume that plaintiff had the same knowledge of the execution sale as he himself had, and was entirely competent to protect his own interests.

Application denied.