Johnston v. Wear.

---

No. 23,398.

VIRGIL W. JOHNSTON and THE ILLINOIS TRUST AND SAVINGS BANK, *Appellees,* v. F. E. WEAR et al., *Appellants.*

SYLLABUS BY THE COURT.

1. JUDICIAL SALE—*Redemption—Rights of Lienholders.* A creditor who attaches the real property of his debtor becomes a lienholder within the meaning of section 478 of the code of civil procedure and cannot, under an order of sale issued in obedience to a judgment rendered in his favor, sell the real property to satisfy the attachment lien after a sheriff's sale of the property under a judgment in favor of a superior lienholder and a redemption from the sheriff's sale by the attachment debtor. (Civ. Code, § 497.) The redemptioner takes the title that would have been conveyed to the purchaser at the sheriff's sale.

2. RES JUDICATA—*Matters Arising on Motion After Judgment.* Matters determined on a formal motion after judgment may be *res adjudicata,* but matters which are not necessarily connected with and do not become a part of the judgment on the motion are not conclusive in other actions.

3. PRIORITY OF LIENS—*Title Acquired Through Foreclosure and Redemption—Lien Acquired by Attachment Proceedings.* A grantee from one who obtains the title to real property in fraud of the rights of a creditor gets such a title to the property as will permit the grantee to redeem the prop-

erty from a sheriff's sale made under a judgment foreclosing a mortgage superior to the rights of the defrauded creditor who attaches the real property as the property of the defrauding debtor about the time the foreclosure action is commenced.

4. APPEAL—*Findings on Conflicting Evidence Conclusive.* On appeal, a general finding of the trial court resolves in favor of the successful party all facts on which there was conflicting evidence.

5. JUDICIAL SALE—*Redemption—Disposition of Money Paid for Redemption.* Neither the purchaser of real property at a sheriff's sale nor any of those in privity or in association with him can, by any arrangement between themselves, retain the title to the property and at the same time obtain the money paid to the clerk of the district court by the owner of the property to redeem it from the sale or keep the money paid by the owner direct to the purchaser for the purpose of obtaining a deed from him conveying the land to the owner.

Appeal from Thomas district court; CHARLES I. SPARKS, judge. Opinion filed January 7, 1922. Affirmed.

*Asa M. Smith,* and *V. L. C. Smith,* both of Colby, *F. W. Casner,* and *Samuel Feller,* both of Kansas City, Mo., for the appellants.

*E. H. Benson,* of Colby, *B. Hudson,* and *Douglas Hudson,* both of Fort Scott, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: Virgil W. Johnston and the Illinois Trust and Savings Bank sued F. E. Wear, F. W. Casner, and the Irrigation Loan and Trust Company to recover certain real property. The plaintiffs recovered judgment against F. E. Wear. F. W. Casner and the Irrigation Loan and Trust Company in open court disclaimed all interest in the real property and their demurrer to the evidence of the plaintiffs was sustained. All the defendants appeal, but F. E. Wear seems to be the only defendant now claiming the property.

So far as this action is concerned, the plaintiffs' title to the property starts on February 2, 1915, with E. R. Mickelberry as owner. He on that day contracted to sell the land to Frank Brasier, who caused Mickelberry to execute the deed to Grace B. Brasier, the wife of Frank Brasier. They joined in the execution of a mortgage to E. R. Mickelberry for $4,000. The Commonwealth Trust Company became the owner of that mortgage, and in September, 1915, commenced an action to foreclose it. The plaintiffs in this action, together with the Brasiers and all who were then shown by the records to have any interest in the land, were defendants in the foreclosure action. On March 21, 1916, judgment of foreclosure was rendered, and, on May 1, 1916, the land was sold thereunder to the Commonwealth Trust Company, to whom a certificate of sale was issued. That certificate became the property of the Irrigation

Loan and Trust Company. Defendant F. E. Wear did not redeem from the sale under the foreclosure. A sheriff's deed was issued to the Irrigation Loan and Trust Company on November 2, 1917. On November 4, 1915, plaintiff Virgil W. Johnston obtained a deed to the land from Grace B. Brasier and her husband. On October 19, 1917, Virgil W. Johnston paid into the office of the clerk of the district court the amount necessary to redeem the land from the sale and procured a redemption certificate. At the time the sheriff's deed was executed to the Irrigation Loan and Trust Company, neither that company nor the sheriff knew of the redemption by Virgil W. Johnston. On November 3, 1917, upon ascertaining that the land had been redeemed from the sheriff's sale, the Irrigation Loan and Trust Company tendered to the clerk of the district court a quitclaim deed and demanded the redemption money that had been paid by Virgil W. Johnston. The clerk on the instructions of one of the attorneys for Virgil W. Johnston and the Illinois Trust and Savings Bank refused to pay over that money. Afterward, Virgil W. Johnston and the Illinois Trust and Savings Bank filed a motion in the foreclosure action asking that the clerk of the district court be ordered to pay the redemption money back to Virgil W. Johnston and the Illinois Trust and Savings Bank. Evidence was introduced on the hearing from which the court made the following findings of fact:

"1. That the money deposited by the moving party was a redemption by the moving parties and amounted to a redemption, and that any error or discrepancy therein was waived by the certificate holder.

"2. That the certificate holder, on learning of said redemption, prepared and tendered a quit claim deed to the clerk of this court and demanded said redemption money which was refused under the direction of Mr. E. H. Benson, the moving party's attorney.

"3. That later, Douglas Hudson, as attorney for the moving parties, and F. W. Casner met in Kansas City, and agreed on delivery of said deed which was previously tendered to the clerk of this court, and the payment of the agreed amount by the moving party direct to F. W. Casner to complete said redemption.

"4. That said payment and delivery of said deed was simply a continuation of the proceeding for redemption and involved nothing more and in no way affected the proceeding of *Wear v. Brasier* in the United States Court of Kansas.

"5. That the moving parties having made redemption outside of court and having received and recorded a deed from the certificate holder to complete said redemption and clear the record of the sheriff's deed erroneously issued on said certificate after redemption had been made.

"6. That said proceeding, including the deed from the Irrigation Loan and Trust Company, to Virgil W. Johnston, recorded in Book 32, page 460, of the office of the recorder of deeds of Thomas County, Kansas, amounted to a redemption and that the said motion be therefore sustained and the clerk is hereby ordered to pay said moving parties, or E. H. Benson, their attorney, the amount deposited less the cost of this proceeding."

The court ordered the money to be paid to Virgil W. Johnston and the Illinois Trust and Savings Bank. Virgil W. Johnston withdrew the money and receipted for it. The Irrigation Loan and Trust Company, for $4,800 paid by the plaintiffs, executed and delivered a quitclaim deed for the land to Virgil W. Johnston. That deed contained the following recital:

"This deed being given to convey all interest received or claimed under sheriff's deed recorded in Book 10, at page 515 of the records of the office of the Recorder of Deeds of Thomas Co., Kansas."

F. E. Wear's title is based on judicial proceedings in the United States district court for the district of Kansas. Frank Brasier was indebted to F. E. Wear. In September, 1915, the latter commenced an action against Frank Brasier in the United States district court to collect the debt and caused a writ of attachment to be issued and levied on the land. Grace B. Brasier was not a party to that action. After Virgil W. Johnston had obtained the warranty deed from Grace B. Brasier, he and the Illinois Trust and Savings Bank intervened in the suit pending in the United States district court and claimed ownership of the land under the deed that had been executed by Grace B. Brasier to Virgil W. Johnston. That court denied the prayer of the interveners and found that Frank Brasier had, for the purpose of hindering, delaying, and defrauding his creditors, caused the deed from E. R. Mickelberry to be made to Grace B. Brasier; that the conveyance from Grace B. Brasier and Frank Brasier to Virgil W. Johnston had been made as security for the payment of an indebtedness owing by Frank Brasier to the Illinois Trust and Savings Bank; and that Virgil W. Johnston and the Illinois Trust and Savings Bank had actual notice of the pendency of the suit in the United States district court and of the issuance of the writ of attachment and of its levy upon the real property. Under section 86 of the code of civil procedure, notice of the pendency of the action in the federal court was filed with the register of deeds of Thomas county on March 22, 1916. On December 13, 1917, judgment was rendered by the federal court against Frank Brasier,

the attached land was again sold under that judgment, and on November 12, 1919, a marshal's deed to F. E. Wear was executed.

1.  Defendant F. E. Wear argues that—

"The District Court erred in refusing and in failing to declare the law to be that an attachment creditor before judgment in the State of Kansas is not a lien holder with the right to redeem under the redemption laws," and that—

"The District Court erred in holding that an attaching creditor whose claim was not confirmed by judgment and on which judgment was rendered after the period of redemption had expired upon a foreclosure and sale under a prior mortgage, to which proceeding such attaching creditor was not a party, was affected by such period of redemption or barred thereunder upon failing to redeem within fifteen months from the date of said sale."

If an attachment creditor can hold attached land until judgment is rendered in his favor and a sale be had thereunder, it must be because he acquires a lien thereon—such a lien as may be protected by redemption from a sheriff's sale under a judgment in favor of a prior lienholder. This court has said that an attachment creditor obtains a lien on the attached property. (*Tennent v. Battey,* 18 Kan. 324, 328; *Wafer v. Harvey County Bank,* 36 Kan. 292, 13 Pac. 209.)  In the cases cited, the property attached was personal property, but no reason is apparent why there should be any difference between the effect of the attachment of personal property and an attachment of real property. The interest acquired by an attaching creditor in the attached property is discussed in 6 C. J. 266-309 under the head, "Nature and priority of attachment lien." F. E. Wear from the time of the levy of the attachment on the property became an attachment lien creditor. (*Mill Co. v. Bangs,* 6 Kan. App. 38.)  6 C. J. 269 uses this language:

"The prevailing doctrine is that the lien dates from the time when the writ of attachment is levied, or, as the proposition is often stated, the title of the purchaser of attached property at an execution sale relates back to the time of levy."

Section 478 of the code of civil procedure in part reads:

"Any creditor whose claim becomes a lien prior to the expiration of the time allowed by law for the redemption of creditors may redeem."

F. E. Wear being a creditor and holding a lien inferior to the mortgage in the foreclosure action had the right to redeem the property from the sheriff's sale in that action. Section 497 of the code of civil procedure now becomes very material. That section reads:

"Real estate once sold upon order of sale, special execution or general exe-

16—110 Kan.

cution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for."

The sale of the real property under the judgment in the federal court was made in violation of this statute. No right was given by that sale, nor was any title conveyed by the deed issued under it. In *Case v. Lanyon*, 62 Kan. 69, 61 Pac. 406, this court said:

"By the provisions of section 23 of the act of 1893, providing for the sale of real estate upon execution or other like process (Laws 1893, ch. 109; Gen. Stat. 1897, ch. 95, art. 22; Gen. Stat. 1899, § 4742, *et seq.* [now section 497 of the code of civil procedure]), land once sold upon such process cannot again be sold in satisfaction of any inferior judgment or lien under which the holder of such lien was allowed a right of redemption contingent upon the non-exercise of the same right by the preferred classes of persons therein mentioned, but whose contingent right did not accrue to him on account of the exercise of the superior right by one of the preferred classes." (Syl.)

To the same effect is *Gille v. Enright*, 73 Kan. 245, 84 Pac. 992.

If no redemption had been made by Virgil W. Johnston, the sheriff's deed would have conveyed the land to the purchaser free from all claims of F. E. Wear. Under a redemption statute, not materially different from our own so far as this case is concerned, the supreme court of Arizona in *Copper Belle Min. Co. v. Gleeson*, 14 Ariz. 548, said:

"A redemptioner from an execution sale acquires the same interest in property sold under execution as the purchaser." (Syl. ¶ 7.)

In *White v. Leeds Importing Co.*, 72 Minn. 352, the supreme court of that state, in discussing the rights of a junior lienholder who had redeemed said:

"As such redemptioner, he became an innocent purchaser for value; and we discover no legal principle upon which he can be deprived of any of his property rights which he has acquired under his redemption." (p. 356.)

The Minnesota statute, so far as this case is concerned, is substantially the same as ours. These decisions accord with the purpose of section 497 of the code of civil procedure. If Virgil W. Johnston had redeemed from the sheriff's sale, he would have acquired the title that would have been conveyed by the sheriff's deed if no redemption had been made.

2. On the hearing of the motion for the return of the redemption money paid to the clerk, the court found that the deed from the Irrigation Loan and Trust Company to Virgil W. Johnston was

made to complete the redemption that had been attempted. The defendant argues that this finding was *res adjudicata* and binds the plaintiffs. F. E. Wear is not bound thereby unless he and the Irrigation Loan and Trust Company were in privity with each other, and not then unless it was necessary to ascertain the purpose of the deed in order to come to a correct conclusion on the motion. It was not necessary for the court to find the purpose for which the deed was made in order to ascertain that the plaintiffs were entitled to the redemption money. The Irrigation Loan and Trust Company had received an amount equal to what it would have been entitled to if redemption had been made, and, whether the money received by that company was redemption money or purchase price, Virgil W. Johnston was entitled to the money he had paid to the clerk to redeem from the sheriff's sale. In *Mitchell v. Insley,* 33 Kan. 654, 657, 7 Pac. 201, this court said:

"It is the general duty of the court trying a case to find upon all the issuable facts; yet findings which are not necessarily included in and become a part of the judgment, are not conclusive in other actions. Even where such findings are confirmed by final judgment, they are adjudications only so far as they are necessarily included in and become a part of the judgment. (*Auld v. Smith,* 23 Kan. 65.) 'A thing contained in the finding or verdict, but not included in or confirmed by the judgment, cannot be considered as an adjudication or used as evidence, unless some other ground can·be found for its use than merely that it is contained in such finding or verdict.' (*Auld v. Smith,* supra.)" (See, also, *Redden v. Metzger,* 46 Kan. 285, 289, 26 Pac. 689.)

3. The defendant contends that the district court erred in rendering judgment contrary to that of the federal court on the intervening petition of Virgil W. Johnston and the Illinois Trust and Savings Bank. Under the judgment of that court, the title acquired by Virgil W. Johnston from Grace B. Brasier was subject to the rights acquired by F. E. Wear under his attachment. However, that title gave Virgil W. Johnston the right to redeem from the sheriff's sale. The title of Virgil W. Johnston depends on the deed from the Irrigation Loan and Trust Company to him, either as a redemption or as an absolute conveyance of the land, and he must prevail, because his title is based on redemption from the sale under the foreclosure or on the deed issued thereunder.

4. This action was tried by the court without a jury, and no special findings of fact were made. The general finding of the court was in favor of the plaintiffs. That resolved against F. E. Wear all the facts on which there was conflicting evidence. The

purpose for which the deed was given by the Irrigation Loan and Trust Company to Virgil W. Johnston was an issue in the present action. The attorneys who conducted the negotiations concerning that deed testified on the trial in this action. Their testimony was conflicting. F. W. Casner testified that the deed was to complete the redemption that had been attempted by Virgil W. Johnston. Douglas Hudson testified that it was a straight conveyance of the title. The quoted recital in the deed indicates that it was intended to convey the title. The deed itself bears that construction. If the result in this action depends on conflicting evidence, the general finding in favor of the plaintiffs must control, and the plaintiffs must prevail.

5. Other matters may profitably be examined before a final conclusion is reached. F. W. Casner was the attorney for F. E. Wear in the United States district court, in the trial of the present action in the district court in this state, and represents Wear in this court. Douglas Hudson was one of the attorneys for Virgil W. Johnston and the Illinois Trust and Savings Bank in the foreclosure action and represents them in this court. The certificate of purchase issued to the Commonwealth Trust Company in the foreclosure action was obtained by F. W. Casner by written assignment in which he was authorized to insert the name of any person or corporation he might desire as assignee. He inserted the name of the Irrigation Loan and Trust Company under an understanding between F. E. Wear and that Company. There was evidence which tended to show that F. W. Casner was the real party in interest in the action in the United States district court instead of F. E. Wear; that Mr. Casner was the president of the Irrigation Loan and Trust Company; and that in substance he was that company. Under the circumstances, it would be inequitable and unjust for F. E. Wear, F. W. Casner or the Irrigation Loan and Trust Company to keep the land and at the same time retain the money that had been paid either as a redemption of the land from the sheriff's sale or for the purchase of the land, or for any one of the three to keep the title to the land and either of the other two to retain the money.

Thirteen specifications of error are argued, but it is thought that every question presented is answered and that further discussion is unnecessary.

The judgment is affirmed.