No. 37,591

THE UNITED STATES OF AMERICA, *Appellant*, v. ESTATE OF CHARLES JUNGELS, Deceased, *Appellee*.

(207 P. 2d 402)

Opinion filed June 11, 1949.

*Malcolm Miller*, assistant United States district attorney, argued the cause, and *Lester Luther*, United States district attorney, was with him on the briefs for the appellant.

*H. G. Engleman*, of Salina, argued the cause, and *B. I. Litowich, LaRue Royce, E. S. Hampton, H. H. Dunham, Jr., John Q. Royce*, all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was begun by the United States of America making a demand in probate court in the estate of a decedent for the payment of two notes alleged to have been given an agency of the United States by decedent, and upon which it was alleged he had made only a small payment. This demand was made by the United States Department of Agriculture, Farmers Home Administration. Amongst other things, it alleged that the Farmers

Home Administration, an agency of the United States, became successor in interest to the Emergency Crop and Feed Loans made by the Secretary of Agriculture and Governor of the Farm Credit Administration and the loans made by the Resettlement Administration and the Farm Security Administration. The probate court disallowed the demand. On appeal the issues were submitted to a jury, which returned a verdict against the United States. Judgment was entered accordingly. The United States has appealed.

The notes were given by the decedent to the Governor of the Farm Credit Administration, one for $50 May 15, 1934, and one for $100 May 4, 1935. They bore interest at the rate of five and one-half percent per annum and were each due October 31, 1934, and 1935, respectively. The demand was made May 26, 1948. It was denied by the probate court July 23, 1948. The United States duly appealed to the district court.

When the appeal reached the district court the administrator of decedent's estate filed an answer in which he admitted the execution of the notes. He denied, however, that no payments had been made other than those credited and alleged the notes had been fully paid.

The field supervisor for the Farmers Home Administration testified that he was familiar with the notes; that they showed only a payment of forty-four cents on the principal and seven cents on the interest on one of them; that payments could have been made to various field representatives of the Emergency Crop and Feed Loan Office, mailed directly to the governor of the Farm and Credit Administration or could have been mailed to Washington; that the notes and files kept by the United States were transferred directly from the Emergency Crop Loan Administration at Denver. He also testified that if decedent had paid he surely would have protested all the dunning letters he had received on an account he did not owe; that he had tried to find decedent during his lifetime but was unsuccessful. The statement of account which showed $258.16 principal and interest was introduced.

The administrator of the estate testified that decedent left an estate of approximately $4,500; that no claims other than the funeral claim and that of the government had been filed; that he knew nothing about the debt due the government and decedent kept no records; that decedent worked for him up to the time of his death at a salary of $35 per week plus a place to live, lights and fuel, and as far as he knew was able to pay his debts; that

decedent paid most of his debts by cash and did not keep much of a checking account.

The government witness being recalled testified that the principal indebtedness amounted to $149.31 and the interest to $108.35 and there was an interval from the time decedent left Luray, Kan., about two years, until he was found in Salina, Kan.; that his agency could not locate decedent; that after he was found in Salina the witness wrote at least four collection letters to him.

At the close of the testimony the plaintiff moved for a directed verdict. This motion was denied. The trial court proceeded to instruct the jury. Amongst these instructions were 4, 5 and 7. They were, as follows:

"4. You are further instructed that in an ordinary case a creditor cannot wait more than five years to collect on a written note. If he does, the law protects the debtor and the latter may use the five years statute of limitations as an absolute defense to the plaintiff's action. You are instructed that the statute of limitations does not run against the federal government, however, the fact that the statute of limitations does not apply against the federal government does not affect the operation against it of a presumption of payment from the lapse of time. The presumption of payment from the lapse of time, however, as to debts due the government, is not conclusive but one which may be rebutted by evidence showing that no payment has actually been paid.

"5. You are instructed that the notes sued upon in this case were executed and matured in 1934 and 1935, 13 or 14 years ago. The lapse after a debt is due over a considerable period of time may raise a legal presumption of payment and even if the period of time is less than the periods required by law to raise the presumption, it may be sufficient evidence of payment to warrant the inference of payment when considered in connection with all the other circumstances of the case. So, if you find from all the evidence presented that it is more likely that these notes have been paid than that they have not, you will find for the defendent administrator.

"7. You are instructed that in connection with the long lapse of time in this case, you may take into consideration all the other facts such as the solvency of the debtor throughout the period, the fact that the debtor had real and personal property not exempt by law which could have been taken in execution, the presence or absence of a demand by the government."

The plaintiff made an objection to these instructions, which was overruled. The jury returned a verdict in favor of the administrator. The plaintiff moved for judgment notwithstanding the general verdict. This motion was overruled.

The motion for a new trial was on the grounds that the trial court erred in overruling plaintiff's motion for a directed verdict; in giving instructions 4, 5 and 7; that the verdict and judgment

were contrary to the evidence and there was no evidence to support the verdict; and the trial court erred in overruling plaintiff's judgment notwithstanding the verdict. This motion was overruled.

The United States has appealed. The specifications of error are that the trial court erred in overruling the motion of plaintiff for a directed verdict; in its instructions to the jury; in overruling plaintiff's motion for judgment notwithstanding the verdict; and in overruling plaintiff's motion for a new trial.

Plaintiff first argues here that the court erred in overruling its motion for a directed verdict. In this connection it first points out that loans made through the agencies mentioned to farmers were the acts of the United States in its sovereign capacity.

There is no serious contention that such is not the rule. The trouble arises when we apply the rule to the facts in this record. The claim was contested by the defendant administrator on the theory that the lapse of time, together with other circumstances, could be considered on the question of whether the notes had been paid and that since the administrator of the estate denied the allegation that the notes had not been paid, then the question of whether they had been was a proper one to submit to the jury.

The United States points out that only about thirteen or fourteen years had elapsed since the maturity of the notes in question. It argues the rule is there is no presumption of payment when less than twenty years have elapsed. Hence there could be no presumption of payment in this case. On the question of whether the court erred in overruling the motion of the United States for a directed verdict the United States argues that, granted that the lapse of time should be considered along with the other evidence on the question of whether the notes had been paid, there was no other evidence and since the presumption of payment does not run against the government in its sovereign capacity, then there was no question to submit to the jury.

This argument fails to give proper consideration to some circumstances that appear in this record. Besides the lapse of time, there was evidence that decedent was not given to the practice of avoiding his obligations; that he died with an estate considerably more than sufficient to pay these two notes; that the government is usually diligent in collecting obligations due it. There was a further persuasive piece of evidence to the effect that decedent paid a note in full that was made after the last one of these notes. Just why the government accepted the payment and applied it to the pay-

ment of the new note rather than the old one does not readily appear. The debtor was dead when this claim was filed. His testimony on the question of payment was not available. In addition, there was evidence that the notes had been in possession of some two or three different federal agencies and the records of one of them had been transferred from an office in Wichita to the office of another agency in Denver. Also the same witness testified that payments could have been made to various field representatives of the Emergency Crop and Feed Loan office, mailed directly to the Governor of the Farm Credit Administration, the Regional Office of the Crop and Feed Loan Section of the Farm Credit Administration and payments could have been mailed to Washington; that it would have been possible to pay either in cash or by check.

Under such circumstances, it will not do to hold there was no other evidence of payment than the lapse of time. The trial court did not err in overruling the motion of the United States for a directed verdict.

The theory upon which instructions Nos. 5 and 7 were given is expressed in the rule found in a note at 1 A. L. R., 792. It is, as follows:

"But while the lapse, after a debt is due, of a coniderable period of time, less than twenty years, will not raise the legal presumption of payment, it may be evidence of payment sufficient to warrant the jury in inferring payment, when considered in connection with other circumstances."

In support of this rule the text cites:

*M'Murray v. M'Murray,* 17 N. Y. S. 657. In that case a mortgagor had remained in possession of a bond and mortgage for fifteen years. After his death the mortgagee assigned the deed and the mortgage and the assignee brought an action to foreclose it. The mortgagor during his lifetime was at all times solvent and able to discharge the mortgage. No effort was ever made to collect it during the fifteen years. The Court of Appeals of New York held that the mortgage must be presumed to have been paid. The court said:

"The great lapse of time that the mortgagor had been in the undisputed lawful possession of this bond and mortgage, and that no effort had ever been made to collect either interest or principal by the mortgagee, afford a very high degree of evidence that, if the mortgage and bond ever had any validity, it had long been satisfied." (p. 658.)

In *Norton v. Aiken,* 134 Ga. 21, 67 S. E. 425, the court held:

"The failure of a creditor to enforce collection of a note not under seal, but secured by deed, for more than fifteen years after maturity of the note, may be

considered by the jury, in connection with other circumstances, in determining whether payment of the note might be inferred." (Syl. ¶ 4.)

In *Garnier v. Renner et al.*, 51 Ind. 372, the note upon which suit was brought had been made August 20, 1859, and the action to collect it was commenced October 4, 1872. The maker of the note held it had been paid. The court said:

"Payment, like any other fact, may be proved by circumstantial, as well as direct evidence. In the absence of a statute of limitations, payment was presumed, in the absence of explanatory circumstances, after twenty years. But it might, and still may be inferred, by the jury or court trying the cause, from circumstances, coupled with the lapse of a shorter period. 2 Greenleaf's Ev., sec. 528; *Denniston v. McKeen*, 2 McLean 253.

"The circumstance sought to be proved by the defendant, and excluded by the court, was of such a nature as tended strongly to support the theory of the defendant, that the note had been paid. The conduct of Renner on that occasion was wholly inconsistent with the idea that the note was unpaid. He was pressed for money, and if the amount of the note was then due him and his partner from Garnier, it is hardly possible that he would not then have demanded its payment." (p. 374.)

In *Mercantile Bank v. Hawe*, 33 Mo. App. Rep. 214, the judgment was exhibited in the estate of a deceased in 1887. The judgment had been recovered in 1876. The defendant showed that the maker of the note had been in the city engaged in extensive business and solvent during all the years that had elapsed. The court said:

"The burden of proof to show payment was wholly upon the defendant, and while no legal presumption of payment arises from the mere staleness of a claim, short of the statutory period of limitation, such payment may be inferred by the jury from the lapse of time for a much shorter period coupled with other circumstances." (p. 217.)

*Lee v. Newell*, 107 Pa. St. 283, was a suit to collect notes brought more than seven or eight years after they were taken. There is some evidence that the notes had been paid. The maker of the notes was dead. The court held:

"A delay of seven or eight years in bringing suit on a specialty, is slight evidence of payment, varying according to circumstances; and where it is submitted to a jury to infer payment from circumstances, the weight to be given to delay or promptness in bringing suit, is for them to determine." (Syl. ¶ 3.)

The instructions to which objection was made simply submitted the issues in conformity with the foregoing rules. While the statutes of limitation and nonclaim do not run against the United States when suing in its sovereign capacity it is well established that when the United States brings an action for money it is governed by the

rules of evidence just as any litigant. (See *Chesapeake & Delaware Canal Co. v. United States*, 223 Fed. 926.)

The judgment of the trial court is affirmed.