## No. 41,429

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, *Appellee,* v. GEORGE HETZEL, GRACE MARIE HETZEL, et al., *Appellees,* and THE UNITED STATES OF AMERICA, *Appellant.*

(341 P. 2d 1002)

Opinion filed July 10, 1959.

*Morton Hollander,* of Washington, D. C., argued the cause, and *George Cochran Doub,* assistant attorney general, *Wilbur G. Leonard,* United States attorney, *E. Edward Johnson,* assistant United States attorney, and *William A. Montgomery,* of Washington, D. C., were with him on the briefs for the appellant.

*John A. Etling,* of Kinsley, and *Barton E. Griffith,* of Topeka, argued the cause, and *W. N. Beezley,* of Kinsley, was with them on the briefs for the appellees, George Hetzel and Grace Marie Hetzel.

The opinion of the court was delivered by

ROBB, J.: The John Hancock Mutual Life Insurance Company, hereafter referred to as the insurance company, on September 3, 1957, filed the original suit herein to recover judgment on its note and foreclose its first mortgage lien on real property in Edwards county belonging to George Hetzel and Grace Marie Hetzel, hereafter referred to as mortgagors, who had executed a note and mortgage as security therefor. Another defendant and the appellant here, the United States of America, hereafter referred to as the government, is also holder of notes and a second mortgage, as security for one of the notes, executed by the same mortgagors on the same real property. In this appeal we are not concerned with other defendants of record or their claims. No dispute exists as to the priority of the mortgages nor as to the pleadings and we shall therefore refer only to the pertinent parts thereof as we proceed with our discussion of the points at issue.

On December 4, 1957, the trial court entered judgment on the respective notes and foreclosed the first mortgage in favor of the insurance company and the second mortgage in favor of the government. The decree further provided that if the mortgagors failed to pay the judgments within ten days, the sheriff of Edwards county was directed to advertise and sell the real property according to law subject to redemption for a period of eighteen months after the date of sale. The proceeds were to be applied on costs, taxes, on the first lien of the insurance company and then on the government's second lien.

The mortgagors failed to pay within ten days and on January 22, 1958, the sheriff's sale was held. The only bidder was the insurance company which bid the property in for the full amount of its judgment, interest, taxes and costs. The government did not bid at the sheriff's sale. The insurance company was the only party who appeared to move for the court's confirmation order of the sheriff's sale. On February 5, 1958, the trial court confirmed the sale and directed the sheriff to issue to the purchaser a certificate of sale for the real property, fixing the period of redemption at eighteen months from the date of sale. If redemption were not made within time, the sheriff was directed to make, execute and deliver to the holder of said certificate his sheriff's deed to the real property and put the holder thereof in possession.

On June 5, 1958, the government requested the district court clerk to issue a certificate of redemption to it pursuant to its tender under G. S. 1949, 60-3451. The amount thereof was to be measured by the *lex rei sitae* (normal state-law rule) to effectuate its right to redeem the property under 28 U. S. C. 2410 (c), which section is appended hereto. This request was declined by the clerk and in a letter dated July 8, 1958, the district court, in brief, informed the government that the holder of the certificate of purchase and the mortgagors questioned the government's right to redeem the real property at that time and consequently the clerk would not issue the redemption certificate until the court so ordered. The letter further stated the court would be on vacation until September but it presumed the government would want to file a motion raising the question and would serve opposing counsel and have the motion set for hearing.

On July 23, 1958, the government filed its motion seeking an order of the district court directing the clerk to issue a certificate of redemption to it, alleging that:

"(a) The defendant has made a proper tender to the Clerk in keeping with the provisions of Section 60-3451, General Statutes of Kansas, 1949, and has filed with said tender its affidavit stating the amounts still due on its claim.

"(b) The provisions of Title 28, United States Code, Section 2410 (c), under which joinder of this defendant as a party to this action is authorized, accord this defendant a right of redemption co-existent with that accorded the defendant owner by Section 60-3440, General Statutes of Kansas, 1949, during the first twelve months after the sale of the property involved herein."

Another portion of the motion contained the affidavit referred to in (a) above.

On September 3, 1958, during a hearing on the government's motion, the mortgagors contended the trial court was without jurisdiction to grant the relief sought in the government's motion. The trial court so found and in its order overruling the motion on the same day stated:

". . . this court is without jurisdiction to grant the relief prayed for and has no jurisdiction of the subject matter of said motion."

The government timely perfected the instant appeal from the above order and raises two questions.

1. Did the trial court err in denying the government's motion made on the ground that 28 U. S. C. 2410 (c) accords the government a co-existent redemption right with that of the mortgagors under G. S. 1949, 60-3440?

2. Did the trial court have jurisdiction over the subject matter of the motion and to grant the relief prayed for?

On January 14, 1959, the mortgagors redeemed the property and were issued a certificate of redemption by the clerk of the court.

As is customary, we will proceed to the determination of the jurisdictional question, if one there be, before reaching the first question raised by the government.

The foreclosure decree entered on December 4, 1957, and the order of confirmation of sheriff's sale on February 5, 1958, occurred during the term of court beginning on the fourth Monday of October, 1957, the next term began on the second Monday of February, 1958, and the government's request of the court clerk for a redemption certificate made on June 5, 1958, was in the term of that court which began on the first Monday of May, 1958. The motion, as above stated, was filed on July 23, 1958, which means that two terms of court in the thirty-third judicial district including Edwards county (G. S. 1949, 20-1029a) had expired from the time of the trial court's decree and order on December 4, 1957, and the government's demand on the court clerk and motion addressed to the trial court on July 23, 1958.

The mortgagors contend that a trial court loses jurisdiction over its judgment after the expiration of the term in which a judgment is rendered absent the exceptions provided for in G. S. 1949, 60-3007, which are not present here. The contention is too far-reaching. The controlling rule of law as to jurisdiction after term was stated in *Keys v. Smallwood,* 152 Kan. 115, 102 P. 2d 1001.

"Rule followed that a judgment cannot be set aside, modified or in anywise affected after the term at which it is rendered except as provided by the civil code." (Syl. ¶ 1.)

However, the Keys case was a garnishment proceeding and is not applicable in our present case.

Other authorities cited by the mortgagors are somewhat similar to the overall picture presented by our present case but they are distinguishable as to the question under consideration and, therefore, are not determinative thereof.

The government calls our attention to *Johnson v. Wear,* 110 Kan. 237, 204 Pac. 141, wherein (p. 243) *Mitchell v. Insley,* 33 Kan. 654, 657, 7 Pac. 201, was cited. The Mitchell case involved an original ejectment action where a deed was determined to constitute a mortgage to secure a payment of $2,000 and the mortgagee had a lien upon the land but it was further determined his remedy was not by ejectment. Subsequently the mortgagee filed a mortgage fore-

closure suit wherein the amount due under the mortgage was in issue. (p. 658.) The court stated that the amount due on the mortgage in the ejectment action was wholly immaterial, that the adjudication the deed was a mortgage was conclusive, and perhaps that *something was due,* but not the amount. The question of the amount due, therefore, remained undetermined. Justice Marshall in the Johnson case (p. 243) quoted the following language from page 657 of the Mitchell case:

" 'It is the general duty of the court trying a case to find upon all the issuable facts; yet findings which are not necessarily included in and become a part of the judgment, are not conclusive in other actions. Even where such findings are confirmed by final judgment, they are adjudications only so far as they are necessarily included in and become a part of the judgment.' "

The Mitchell case was also cited in *Landon v. Clark,* 221 Fed. 841, 845.

The only provision of the decree of foreclosure pertaining to redemption reads:

". . . and in case said real estate is not redeemed from said sale for a period of eighteen months from the date of sale, as is by law in such cases made and provided. . . ."

By reason of the foregoing, the trial court obviously did not fully determine the redemption rights of the mortgagors as against the government, or *vice versa,* except by the general language of the phrase, ". . . as is by law in such cases made and provided." The redemption rights of the mortgagors under our state statutes (G. S. 1949, 60-3440, *et seq.*) were therefore covered as were also the government's redemption rights under 28 U. S. C. § 2410. Expressed in another way, the trial court, by using the language quoted above, of necessity ruled that all questions regarding the redemption of the real property here involved would be governed by both state and federal law.

We believe the trial court intended to subject the redemption questions to both state and federal law and that it made clear such intention when ruling on the government's motion by use of the following language:

"Now therefore, it is by the court considered, ordered adjudged and decreed that said motion be and hereby is overruled."

What other possible construction can be given this order? The motion was neither dismissed nor stricken, but was ruled upon, and in view of what has herein been said and the authorities relied on by the government in support of its contention that the trial court

did have jurisdiction of the subject matter, we can only conclude the trial court had, and exercised, authority to determine the rights of redemption "as is by law in such cases made and provided," as well as the power to grant or deny the relief prayed for in the motion by the government.

Determination of the second question requires that we set out a part of the mortgage executed by the mortgagors to the government. The form contained the following heading:

> "United States Department of Agriculture
> "Farmers Home Administration
> "REAL ESTATE MORTGAGE FOR KANSAS
> "Special Livestock Loan"

Section 21 of the mortgage contained these provisions:

"THAT TIME IS OF THE ESSENCE of this mortgage and of the note . . . AND SHOULD DEFAULT be made in the payment of the note secured hereby, or any installment due under said note . . . or if for any reason the Mortgagee should deem itself insecure, then in any of said events Mortgagee is hereby irrevocably authorized and empowered . . . (1) to inspect and repair said property . . . (2) to declare the entire indebtedness herein secured immediately due and payable and to foreclose this mortgage in the manner hereinafter set out, and (3) to pursue any remedy for it by law provided; PROVIDED, HOWEVER, that each right, power, or remedy herein conferred upon Mortgagee is cumulative to every other right, power, or remedy of Mortgagee, whether herein set out or conferred by law. . . ."

Section 22 in part provided:

"That Mortgagee may foreclose this mortgage by action in a court of competent jurisdiction in accordance with the laws existing at the time of the commencement thereof. . . ."

Section 23 in pertinent part reads:

"That, should this said property be sold under foreclosure (1) Mortgagee or its agent may bid at such sale and purchase said property as a stranger: (2) Mortgagor will pay all costs . . . (3) Mortgagor does hereby expressly waive, *to the extent permitted by law* the benefits of all homestead, dower, exemption valuation, appraisement, stay and moratorium *laws of the State of Kansas* now in force or which may hereafter become laws, and the rights of possession of the mortgaged property during the period of redemption." (Our emphasis.)

The mortgagors base their contentions primarily on G. S. 1949, 60-3440 as follows:

"For the first twelve months after such sale, the right of the defendant owner to redeem is exclusive; but if no redemption is made by the defendant owner at the end of that time, any creditor of the defendant and owner whose demand is a lien upon such real estate may redeem the same at any time

within fifteen months from the date of sale. A mechanic's lien, before decree enforcing the same, shall not be deemed such a lien as to entitle the holder to redeem."

The government places its reliance on 28 U. S. C. § 2410, which is hereto appended in full, but more particularly it relies on subsection (*c*) thereof, as follows:

"Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem."

Mortgagors referred to other statutes involving redemption. Some of them are of little, if any, help in the determination of this appeal. Briefly stated, those that are pertinent here provide that after the issuance of the certificate to the purchaser at the sheriff's sale (G. S. 1949, 60-3438), the mortgagors could redeem the real property at any time within eighteen months from the day of sale (60-3439); for the first twelve months after the day of sale the mortgagors had the exclusive right to redeem but if at the end of that time they had not done so, any lien creditor could redeem within fifteen months from the date of sale (60-3440); after the expiration of the fifteen months, the mortgagors could still redeem at any time before the end of the eighteen months, but the creditors could not. (60-3447.) The mortgagors could assign or transfer their rights of redemption whereby those same rights would pass to an assignee or transferee. (60-3455.) See *Union Central Life Ins. Co. v. Reser*, 134 Kan. 876, 8 P. 2d 366, for further discussion of some of our redemption statutes.

The sovereign immunity of the government from suit without the express mandate of the Congress to the contrary, by waiver or granting permission for such suit or suits, is of sufficient general knowledge that a full legal discussion thereof would be surplusage.

Neither can there be any argument with the government's contention that federal laws are supreme over state laws where a conflict exists between them such as occurred in an action in a state court to recover statutory penalties for violation of the emergency price control act. (*Testa v. Katt*, 330 U. S. 386, 67 S. Ct. 810, 91 L. ed. 967.) The same is true where there were labor disputes involving interstate or foreign commerce. (*Myers v. Bethlehem Corp.*, 303 U. S. 41, 58 S. Ct. 459, 82 L. ed. 638.)

The Supreme Court of the United States has not been hesitant in cases involving diversity of citizenship to remand them for de-

termination by the federal circuit court under state laws. For example, *Erie R. Co. v. Tompkins,* 304 U. S. 64, 58 S. Ct. 817, 82 L. ed. 1189, was an action concerning tort liability and involved application of state laws by the federal circuit court.

In *United States v. Ryan,* 124 F. Supp. 1, the Minnesota Torrens system as it related to the filing of federal tax liens was comprehensibly explained and it was held that the government failed to comply with the procedural requirements of the state law whereby its lien for taxes was lost. We cannot repeat all that was said in the Ryan case, as to do so would unduly extend this opinion, but the following statements therefrom are of significant consequence herein:

"The United States is not exempt from the provisions of the state statutes. The laws of the United States definitely provide that the tax lien here asserted will not become a valid lien unless notice thereof is filed as by state law prescribed. A state law affecting the title to property must be followed, and is binding upon the United States." (p. 10.)

"At any time, however, up to the time of the foreclosure of the prior mortgage held by Minnesota Federal Savings and Loan Association, the plaintiff could have perfected its lien by filing the notice as by statute required. The foreclosure of the mortgage and the expiration of the period of redemption has now precluded plaintiff from so doing. The mortgage contained a power of sale. Under the laws of the State of Minnesota, a mortgage containing a power of sale may be foreclosed by advertisement. There is nothing in the United States Code which precludes a foreclosure by advertisement. 28 U. S. C. A. § 2410 provides that in any action to foreclose a mortgage the United States *may* be joined as a party defendant. But there is nothing in this section, or in any section of the United States Code, which prohibits a foreclosure under a power of sale or which provides that the United States will not be bound thereby. The Minnesota Federal Savings and Loan Association was entitled to foreclose by advertisement, and the plaintiff, and all other parties interested in the property, is bound by the foreclosure. This exact question was before the Court in the case of Trust Co. of Texas v. United States, D. C., 3 F. Supp. 683, and the Court held that a mortgage foreclosure under power of sale extinguishes not only the rights of the owner in the property sold, but all subsequent and inferior liens thereon, *including the lien of the United States.* Therefore, in the instant case, the foreclosure divested the interest of the registered owner, Kenneth Ryan, and the rights of all parties claiming under or through him, including the plaintiff here." (pp. 10-11.)

A case more analogous to our present one is *United States v. Cless,* 150 F. Supp. 687, where a first mortgagee had obtained a writ of *fieri facias* and later bid in and purchased the mortgaged property at the sheriff's sale. He then sold the property to another but title had not yet passed. The government was seeking

foreclosure of its second mortgage and the question was whether the second mortgage lien was divested by the sheriff's sale in the light of 28 U. S. C. § 2410. In rendering summary judgment against the government, the district court there said:

"At the time the agency [the government] made this loan and entered its mortgage it had notice that its mortgage was second in lien to a first mortgage held by an individual entered over a year prior thereto.

"The mortgagors defaulted on their first mortgage. The mortgagee foreclosed and bought in the property at the Sheriff's sale on his bid of the costs of the sale. Had the second mortgagee been an individual there is no question but that the lien of the second mortgagee would have been extinguished by the foreclosure on the first mortgage. Is the situation changed because the United States happens to be the second mortgage holder?

"The Government leans heavily on 28 U. S. C. § 2410(a), above cited. This statute is not mandatory, —it merely waives sovereign immunity in suits to foreclose mortgages or quiet titles. Haldeman v. United States, D. C. E. D. Mich., 93 F. Supp. 889. In other words, the purpose of this statute in which the United States consents to be named a party in an action which seeks an adjudication touching any mortgage or other lien of the United States is merely to waive sovereign immunity from suit in certain types of cases. Wells v. Long, 9 Cir., 162 F. 2d 842.

"If the United States is entitled to a priority in this case it must be based on some statutory enactment. '. . . the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States.'" (pp. 689-690.)

## The court therein further stated:

"I find no evidence of a Congressional sensitivity in relation to claims of the Government predicated on loans made to individuals by various governmental agencies comparable to that evidenced in relation to tax claims, and for the very obvious reason that the latter deals, as above indicated, with a matter of public policy, —the collection of taxes to enable the Government to .function. Certainly what was said in the Ryan case, supra, is pertinent in connection with the problem presented in this case concerning the lien of the United States under a second mortgage created in the course of an ordinary business transaction of an agency of the United States, as to which there is no federal statutory provision conferring any particular sanctity, and which, therefore, is dependent entirely both as to its position and enforcement upon State laws." (p. 692.)

The Cless case was appealed by the government and appears as *United States v. Cless*, 254 F. 2d 590, where the circuit court affirmed the lower court and stated:

"We find nothing the the statute giving the United States rights in this matter superior to the rights enjoyed by private citizens. The statute accords to the government no such preference." (p. 593.)

## In the same opinion it is further stated:

"In the absence of express Congressional action to the contrary, we think it is not asking too much from a federal agency, which has embarked upon the

business of lending money in competition with private firms and individuals, simply to be governed by the same local law which controls the rights of private citizens in a similar endeavor." (p. 594.)

In view of the language in the above federal court decisions to the effect that there is nothing in 28 U. S. C., § 2410 giving the government rights that are superior or preferential to the rights enjoyed by private citizens, we are unable to see that the government in this appeal has made it affirmatively appear that its substantial rights have been prejudiced. In its answer in the original foreclosure proceedings, the government, under 28 U. S. C., § 2410, could have asked for preferential or superior rights of redemption over those of the mortgagors, or at the time the trial court entered its judgment of foreclosures the government could have sought to have its redemption rights determined, and finally, had the trial court, in view of the decisions of the federal courts, refused to grant such preferential or superior rights, the government still had the authority and power to bid at the sheriff's sale, which would have fully protected it. The government admits that it had the authority and power to bid at the sheriff's sale the same as any private citizen in its position. The federal farm mortgage corporation was holder of a second mortgage under circumstances identicle with those in our present case in *Federal Land Bank v. Ludwig,* 157 Kan. 657, 143 P. 2d 784. The mortgage corporation appealed from an adverse decision of the court below. This court set out the pertinent statutes (pp. 659-660) and in reversing the trial court, substantially stated what has just been said above in respect to the government's right to redeem. (pp. 660-661.)

In *United States v. Jungels,* 167 Kan. 482, 207 P. 2d 402, the government filed a claim on notes which had been barred by the five year statute of limitation for a long time—but less than twenty years. The evidence showed that during his lifetime the deceased maker had been solvent so far as non-exempt personal, real, and mixed property was concerned. The trial court's instructions were that the jury could consider all this in determining "that it is more likely that these notes have been paid than that they have not," (p. 484) and in affirming the verdict and judgment against the government, this court set out the controlling rules of evidence and concluded:

"While the statutes of limitation and nonclaim do not run against the United States when suing in its sovereign capacity it is well established that when the United States brings an action for money it is governed by the rules of evidence just as any litigant." (pp. 487-488.)

Considering the terms of the government's mortgage which bound both it and the mortgagors, all the provisions of 28 U. S. C., § 2410, the appropriate Kansas statutes and the cases decided thereunder, and the points emphasized in the foregoing discussion, we are compelled to hold the trial court was correct in its final decree overruling the motion of the government for a certificate of redemption irrespective of the reasons given or those that may be inferred from the journal entry of judgment.

Affirmed.

## APPENDIX

"28 U. S. C. 2410 provides as follows:

"(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, including the District Court for the Territory of Alaska, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien.

"(b) The complaint shall set forth with particularity the nature of the interest or lien of the United States. In actions in the State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States attorney in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, to the Attorney General of the United States at Washington, District of Columbia. In such actions the United States may appear and answer, plead or demur within sixty days after such service or such further time as the court may allow.

"(c) A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United States as may be provided with respect to such matters by the local law of the place where the property is situated. A sale to satisfy a lien inferior to one of the United States, shall be made subject to and without disturbing the lien of the United States, unless the United States consents that the prop-

erty may be sold free of its lien and the proceeds divided as the parties may be entitled. Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of its claim with expenses of sale, as may be directed by the head of the department or agency of the United States which has charge of the administration of the laws in respect of which the claim of the United States arises.

"(d) Whenever any person has a lien upon any real or personal property, duly recorded in the jurisdiction in which the property is located, and a junior lien, other than a tax lien, in favor of the United States attaches to such property, such person may make a written request to the officer charged with the administration of the laws in respect of which the lien of the United States arises, to have the same extinguished. If after appropriate investigation, it appears to such officer that the proceeds from the sale of the property would be insufficient to wholly or partly satisfy the lien of the United States, or that the claim of the United States has been satisfied or by lapse of time or otherwise has become unenforceable, such officer shall so report to the Comptroller General who may issue a certificate releasing the property from such lien."