**UNITED STATES of America,**
**Appellant,**

v.

**William J. BROSNAN, Francis H. Jacob, Martha M. Berg, George H. A. Parkman, Gladys Marie Short Parkman and Mountain Engineering Company, Appellees.**

**No. 12711.**

United States Court of Appeals Third Circuit.

Argued Dec. 19, 1958.

Decided March 26, 1959.

George F. Lynch, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, James P. Turner, Attys., Dept. of Justice, Washington, D. C., Hubert I. Teitelbaum, U. S. Atty., Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

William L. Jacob, Pittsburgh, Pa., (William L. Jacob, Jr., Pittsburgh, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On January 28, 1948, Martha M. Berg and her husband, J. D. Berg, conveyed to George H. and Gladys M. Parkman 175 acres in Moon Township, Pennsylvania. The Parkmans gave back a purchase money mortgage in the sum of $45,000 which was duly recorded and a mortgage bond in the sum of $90,000. Thereafter the property was conveyed a number of times back and forth between the Parkmans and Mountain Engineering Company, a corporation controlled by the Parkmans; these conveyances

were all subject to the purchase money mortgage.

During a period when the corporation owned the property certain federal tax liens attached to it and were recorded. Thereafter an additional federal tax lien arising from a tax liability of the Parkmans attached to the property and was recorded at a time when the Parkmans held the property. The tax liens were all junior to the mortgage.

Payment of the mortgage was defaulted and the surviving mortgagee on June 7, 1955 caused a confession of judgment to be entered on the bond. The judgment was for $43,135 plus interest from June 1, 1955. Subsequently a writ of fieri facias for the sale of the property issued to the sheriff; upon application, however, the sale was postponed and the surviving mortgagee petitioned the Pennsylvania Court of Common Pleas for a rule upon the United States to show cause why it should not be made a party to the foreclosure proceedings. The rule was granted and served upon the United States. No answer was filed, so eighty-nine days after service the United States was made a party to the proceedings. During the intervening time William J. Brosnan and Francis H. Jacob had acquired the surviving mortgagee's interest.

The sheriff held the sale of the property on January 3, 1956; it was bid in by Brosnan and Jacob for $6,203 and, it is presumed, the discharge of the mortgage indebtedness. The amount of the bid went to satisfy costs of the sale, and for various outstanding local taxes.

On January 3, 1957, one year after the sale the government attempted to redeem the property [1] through the tender by an agent to Brosnan of a check for $6,575.-42, which represented the amount bid at the sheriff's sale, plus interest. Brosnan refused it as totally inadequate to effect a redemption. Brosnan and Jacob have since claimed that an effective redemption would have required a tender of $55,591.28, the amount of their asserted interest in the property.

The United States subsequently brought this action under § 7403, Internal Revenue Code of 1954,[2] to enforce its lien. The district court thus was presented with the question of whether the government lien was still enforcible.

The court held, D.C.W.D.Pa.1958, 164 F.Supp. 357, that the United States had not been made a party to the foreclosure proceedings in the state court by the attempted invocation in that proceeding of 28 U.S.C. § 2410 (1952) because no attempt was made to bring in the United States until after judgment had been entered on the confession of judgment. But the court went on to hold that the lien had nonetheless been divested simply by reason of its being a junior lien.

The government argues that § 7403, Internal Revenue Code 1954, footnote 2 supra, directs and requires that a decree for sale of the property in question be entered here. It is plain, however, that a sale may be decreed only " *  *  * where a claim or interest of the United States  *  *  * is established." Thus the issue presented is whether after the sale on execution following the confession of judgment the United States still held any interest in the property.

For its claim that it continued to hold an interest in the property, the govern-

---

1. 28 U.S.C. 2410(c) (1952).

2. That section reads in pertinent part:
   "(a) *Filing.*—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof  *  *  * the Attorney General  *  *  * may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States  *  *  *."
   "(c) *Adjudication and decree.*—The court shall  *  *  * proceed to adjudi-

cate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403.

ment's basic premise is that once a lien has been established by federal law it remains until it is satisfied or becomes unenforcible by lapse of time.[3] The government asserts that the lien can be satisfied other than by payment only by compliance with one of a number of other federal statutes.[4] It is urged that when these statutes are taken together a plain intent on the part of the Congress to furnish exclusive means for removal of federal liens is made out. Since assertedly none of these provisions has previously been complied with, the government concludes that the lien remains for enforcement in this proceeding.

The claim advanced by the government that state law in no way controls federal tax liens which have attached to property is too broad;[5] the cases cited for this proposition stand more narrowly for the tenet that the priority of a lien of the United States for unpaid taxes relative to other liens always involves a federal question.[6] In this case there is no question of priority, it being conceded that the liens of the United States were junior.

For its conclusion that the federal statutes make out a scheme by which Congress intended to furnish the only means for extinguishing even junior liens held by the United States, the government has relied heavily on the legislative history of what is now 28 U.S.C. § 2410 (1952).[7] The House Report[8] states that without the legislation involved there is no way in which a cloud upon title caused by a junior lien held by the United States can be removed

when a prior mortgage is being foreclosed, since there is no statute to authorize making the United States a party to such a proceeding. The government would conclude from this that a junior lien in favor of the United States remains unaffected when foreclosure of the senior lien is had without making the United States party thereto.

But this court has already held that the purpose of § 2410 was to permit the joining of the United States in foreclosure proceedings on a more senior lien in jurisdictions where joinder would be necessary for estopping the junior lienor from thereafter asserting his claim. United States v. Cless, 3 Cir., 1958, 254 F.2d 590. The Cless case decided that where, as in Pennsylvania, such joinder was not necessary to divest a junior lien, the United States did not have to be joined in order to divest its junior lien. We conclude that the government's position is not convincing and that Congress never intended government-held junior liens not to be subject to divestment by foreclosure proceedings carried out in the state courts without joinder of the United States.[9] Thus state law must be looked to in order to determine those rights and incidents arising from the federally created lien which are not prescribed by federal law. See United States v. Bess, 1958, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135.

In United States v. Boyd, 5 Cir., 1957, 246 F.2d 477, 483, certiorari denied 355 U.S. 899, 78 S.Ct. 261, 2 L.Ed.2d 188, a case closely similar to this one, the court perceptively pointed out that it is the

---

**3.** § 6322, Internal Revenue Code, 1954, 26 U.S.C. § 6322; § 3671 Internal Revenue Code, 1939, 26 U.S.C.A. § 3671.

**4.** §§ 6325, 7403, 7424, Internal Revenue Code, 1954, 26 U.S.C.A. §§ 6325, 7403, 7424; 28 U.S.C. § 2410 (1952).

**5.** Reliance in this case on United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 1948, 169 F.2d 9, is misplaced, since the lien held by the United States there was superior to all others.

**6.** E. g., United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98

L.Ed. 520; United States v. State of Texas, 1941, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356; Ersa, Inc. v. Dudley, 3 Cir., 1956, 234 F.2d 178.

**7.** 46 Stat. 1528 (1931).

**8.** H.Rep. No. 95, 71st Cong.2d Sess.

**9.** We cannot agree with the decision of the Ninth Circuit (which is based on an assumption to the contrary) in United States v. Bank of America National Trust & Savings Association, 9 Cir., 265 F.2d 862.

consequence of the " * * * prior lien and the right of enforcement under it which destroys the junior encumbrance whether it be a private or Federal tax lien. The extinguishment or destruction of the junior lien comes from the nature of the superior lien and not from a later subsequent equity ·determination * * * that this has been the effect of enforcement of the senior lien."

■ Pennsylvania law requires no more notice to junior lienors than is afforded by publication before subjecting their liens to extinguishment by sale of the property under the writ of fieri facias which was issued in this matter. Pa.Stat.Ann. tit. 21, § 804; tit. 12, §§ 2441–2444. Whether this form of notice might raise constitutional questions of ·due process under Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, when the identity of persons holding a junior interest in the property is or should be known to the senior mortgagee is of no concern in the present situation; it is clear that notice of this foreclosure was given to the United States.

■■ The buyer at the Pennsylvania sheriff's sale takes the same estate as was held prior to execution by the one for whose debt the property is sold. Pa.Stat. Ann. tit. 12, § 2447. When the execution is on a judgment for a mortgage debt, the execution relates back to the time of giving the mortgage. West Arch Building & Loan Ass'n v. Nichols, 1931, 303 Pa. 434, 154 A. 703; Moore v. Schell, 1930, 99 Pa.Super. 81. The United States consequently retains no interest in the property.

The government suggests that Metropolitan Life Insurance Co. v. United States, 6 Cir., 1939, 107 F.2d 311, rather that the Boyd opinion, expresses the law for this case. But in that decision the court conceived of the proceeding as one for the divestiture of an existing lien, rather than as one to determine the more basic question of the very existence of the lien.[10]

■ A question remains as to whether the United States had any right to redeem the property under 28 U.S.C. § 2410(c) (1952), and if it did, whether the right was effectively exercised by the tender of only $6,575.42. Without dealing with the effect of the government's present argument regarding inapplicability of the section to this case and so passing the question of whether a right of redemption is conferred only when foreclosure occurs under § 2410, it is plain in any event that the tender was insufficient in amount. One who seeks to redeem is proceeding on the hypothesis that the mortgage has never been foreclosed as to him. He can lift the mortgage only by paying it in full. Collins v. Riggs, 1872, 14 Wall. 491, 81 U.S. 491, 20 L.Ed. 723. It is undisputed that the unsatisfied mortgage debt for which the property was sold amounted to $43,135 plus interest.

Since the United States has demonstrated no right to the property, the judgment will be affirmed.

10. For adverse comment on Metropolitan Life Insurance Co. v. United States, supra, see Notes, 53 Harv.L.R. 894 and 49 Yale L.J. 1106. At pp. 1108 and 1109 of the latter it is said: "In arriving at its result, the majority failed to distinguish between releasing a specific lien and adjudicating a specific lien to be nonexistent. Under this view, an income tax lien once it has properly attached, assumes some absolute status, destructible only upon submission of the premises to resale, in accordance with the provisions of the statute. Destructibility of the tax debtor's interest, by reason of limitation on its extent and consequent failure of the lien for want of a res are ignored as possibilities."