## UNITED STATES *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE CO. ET AL.

No. 18.   Argued October 13, 1960.—Decided November 7, 1960.

*Assistant Attorney General Doub* argued the cause for the United States.   With him on the briefs were *Solicitor General Rankin* and *Morton Hollander.*

*Harry L. Hobson* argued the cause for appellees.   With him on the brief was *Emmet A. Blaes.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The issue in this case is whether the United States, as the second mortagee of real estate judicially foreclosed in a proceeding to which the United States was made a party under 28 U. S. C. § 2410,[1] can redeem within one year from

---

[1] "Actions affecting property on which United States has lien.

"(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien.

"(b) The complaint shall set forth with particularity the nature of the interest or lien of the United States.   In actions in the

the date of sale pursuant to 28 U. S. C. § 2410 (c), despite a conflicting state statute giving the mortgagor the exclusive right to redeem within that period.

The facts are not in dispute and, insofar as here pertinent, may be summarized as follows. Appellee John Hancock Mutual Life Insurance Co. held a note for $25,000, secured by a mortgage on certain Kansas real estate. The note was in default and the insurance company instituted proceedings in the District Court of

---

State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States attorney in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, to the Attorney General of the United States at Washington, District of Columbia. In such actions the United States may appear and answer, plead or demur within sixty days after such service or such further time as the court may allow.

"(c) A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United States as may be provided with respect to such matters by the local law of the place where the property is situated. A sale to satisfy a lien inferior to one of the United States, shall be made subject to and without disturbing the lien of the United States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled. Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of its claim with expenses of sale, as may be directed by the head of the department or agency of the United States which has charge of the administration of the laws in respect of which the claim of the United States arises."

Edwards County, Kansas, seeking a declaration that its mortgage constituted a first lien on the property and asking foreclosure to satisfy this lien. An agency of the United States, the Farmers' Home Administration, held four notes executed by the mortgagors against whom the insurance company was proceeding and one of these notes, in the face amount of $10,565, was secured by a mortgage on the property securing appellee's note. It is undisputed that the United States' secured note was junior in priority to that held by appellee. However, under Kansas law, a senior lienor must join junior lienors in the foreclosure proceeding in order to cut off the junior liens. *Motor Equipment Co.* v. *Winters,* 146 Kan. 127, 69 P. 2d 23. And the only way in which the United States can be joined in its capacity as junior lienor is pursuant to the terms of 28 U. S. C. § 2410, since the United States has not otherwise waived sovereign immunity in this type of situation. Consequently, appellee insurance company joined the United States and the United States cross petitioned for an adjudication that it held a second lien on the property, inferior only to appellee's lien, in the amount owed on all four notes. The Kansas District Court held that appellee enjoyed a first lien entitling it to a judgment of $26,944.78 and that the United States held a second lien by virtue of its secured note, entitling it to $10,402.61.[2] The court ordered both liens foreclosed. At the foreclosure sale, the insurance company bought in the property in the amount of its own judgment. The United States did not bid and the sale was confirmed by the District Court on February 5, 1958. Four months later—on June 5, 1958—the United States instituted proceedings to

---

[2] Judgment for $2,642.39 was entered in favor of the United States on the three unsecured notes. While the United States sought to include these notes in its second lien on the property, the court decreed that this lien extended only to the amount of the secured note.

redeem the property pursuant to the terms of 28 U. S. C. § 2410 (c). This section specifies that, when the United States is joined in a foreclosure proceeding under § 2410— in particular § 2410 (a)—and a sale is held to satisfy a lien prior to that of the United States, "the United States shall have one year from the date of sale within which to redeem." Although the United States satisfied the procedural requirements of Kansas law, Kan. Gen. Stat., 1949, § 60–3451, its tender was refused and, consequently, it moved the court to compel the clerk to issue it a redemption certificate. The District Court denied relief and the Kansas Supreme Court affirmed,[3] holding that the United States' action was barred by the provisions of state law granting the mortgagor the exclusive right to redeem his property during a period of twelve months following the date of a foreclosure sale.

The pertinent Kansas law provides that the mortgagor shall have the exclusive right of redemption for twelve months following the date of sale; thereafter, if the mortgagor has not redeemed, the lien creditors enjoy a three-month period during which they, or the mortgagor, may redeem.[4] Kan. Gen. Stat., 1949, § 60–3440. If the mortgagor redeems at any time, all redemption rights are cut off. *Sigler* v. *Phares*, 105 Kan. 116, 181 P. 628. In this case, the mortgagors redeemed within twelve months of the date of sale but subsequent to the attempt of the United States to redeem.

The narrow question for our decision is whether that part of § 2410 (c) which grants the United States a right

---

[3] *John Hancock Mutual Life Ins. Co.* v. *Hetzel,* 185 Kan. 274, 341 P. 2d 1002.

[4] From the fifteenth to and including the eighteenth month, the mortgagor resumes enjoyment of the exclusive right to redeem. Kan. Gen. Stat., 1949, § 60–3439. Upon the expiration of eighteen months without redemption, the purchaser's certificate of title becomes absolute. Kan. Gen. Stat., 1949, § 60–3438.

to redeem applies to the present situation. If it does, then the inconsistent provisions of state law must fall under the Supremacy Clause of the United States Constitution.[5]   U. S. Const., Art. VI.

On analysis, the question is not only narrow but also susceptible to rapid solution, since the plain language of § 2410 (c) reveals no impediment to its applicability once resort is had to § 2410 (a).   Moreover, an examination of the legislative history of § 2410 shows that Congress considered the redemption provision of § 2410 (c) an important and integral feature of § 2410.   The pertinent excerpts reveal that Congress feared a situation where the United States, as junior lienor, would find its lien dissolved pursuant to § 2410 without having had a chance to protect its right to any amount the foreclosed property might be worth in excess of the senior lien.[6]   As Congress

---

[5] Appellees argue briefly that Congress does not have the power to establish rules governing state-created property rights, citing *United States* v. *Bess,* 357 U. S. 51.   This contention was raised and rejected in *United States* v. *Brosnan,* 363 U. S. 237, 240–241.

[6] Initial concern was expressed by Representative Bloom in a colloquy reported at 72 Cong. Rec. 3120–3121.   Despite the apprehension expressed in this exchange, the bill that eventually became § 2410 passed the House with no provision to protect the United States' rights as junior lienor.   The Senate, however, added a new section authorizing the United States to bid at the foreclosure sale and a delay of the sale until the completion of the next succeeding session of Congress so as to allow the Government time to obtain a congressional appropriation with which to make its bid.   S. Rep. No. 351, 71st Cong., 2d Sess. 1–2.

This addition was stricken by the Conference Committee and the redemption provision now in § 2410 (c) was substituted.   In rejecting the Senate proposal for protecting the rights of the United States as a junior lien holder, the Conference Committee concluded that a federal redemption provision was a more effective method for protecting those rights.   It stated:

"The Senate amendment contains a clause allowing the court to stay proceedings on sale until the expiration of the next session of Congress.   This was no doubt intended to allow Congress to appropri-

recognized, one method of protection for junior lienors is to bid competitively at the foreclosure sale, thereby preventing property worth more than the amount due on the senior lien from being sold at a discount. However, it was noted that, barring special circumstances, the United States could not pursue this procedure unless it first secured an appropriation from Congress and, thus, the one-year period of redemption was inserted to afford the United States sufficient time to secure an appropriation and protect its interests. The protective nature of the redemption proviso in § 2410 (c) was recognized in *United States* v. *Brosnan,* 363 U. S. 237, 246, where this Court stated that "the Government is guaranteed a one-year right to redeem if the plaintiff proceeds under § 2410 . . . ." This proposition is in line with the well-settled rule that Congress may impose conditions upon a waiver of the Government's immunity from suit. See *e. g., Soriano* v. *United States,* 352 U. S. 270, 276, where we added that these protective conditions "must be strictly observed and exceptions thereto are not to be implied."

Appellees concede, as they must, that § 2410 was mandatorily applicable to the present situation since Kansas law required joinder of the United States and the United States can only be joined pursuant to § 2410. However, they would have us find a superseding congressional intent to afford the United States a right of redemption only when no such right is granted under state law; when some privileges of redemption are given by the State to junior lienors, although of lesser magnitude than that provided

---

ate money to enable the United States, if a junior lien holder, to bid enough at the sale to take care of prior liens and thus protect its own. In place of that the substitute bill provides that if a junior lien holder, the United States shall have a year in which to redeem. That does away with any necessity for a delay of sale." H. R. Conf. Rep. No. 2722, 71st Cong., 3d Sess. 4.

in § 2410 (c), then the federal right is no longer pertinent. The short answer to this contention is that no indication of such a limitation appears in the body of the statute—which specifies that the United States "shall" have one year to redeem—or in its legislative history. See *Soriano* v. *United States, supra.*

Appellees also press upon us the fact that the federal agency here concerned, the Farmers' Home Administration, could have protected its junior lien without insisting on a right to redeem under § 2410, since 7 U. S. C. (1952 ed.) § 1025 authorizes the Secretary of Agriculture, who supervises the Farmers' Home Administration, to bid at foreclosure sales.[7] But the significance of this section and its effect on § 2410 is not clear. Concededly, if there were some indication in § 1025 that the power of the Secretary of Agriculture is limited to bidding at the foreclosure sale, then we would be faced with a problem of resolving the two statutes. Cf. *United States* v. *Stewart,* 311 U. S. 60. However, there is no conflict, either express or implied, between § 1025 and § 2410. In effect, appellees would have us read § 2410 as authorizing redemption "except where another federal statute authorizes the particular agency concerned to bid at foreclosure sales." The only support for such an interpretation is the fact that some federal agencies are authorized to bid at foreclosure sales. We think that the logical connection is insufficient

[7] "The Secretary is authorized and empowered to bid for and purchase at any foreclosure or other sale, or otherwise to acquire property pledged or mortgaged or conveyed to secure any loan or other indebtedness owing to or acquired by the Secretary under sections 1001–1005d, 1007, and 1008–1029 of this title; to accept title to any property so purchased or acquired; to operate for a period not in excess of one year from the date of acquisition, or lease such property for such period as may be deemed necessary to protect the investment therein; and to sell or otherwise dispose of such property in a manner consistent with the provisions of section 1017 of this title."

to support such a violent graft on the language of the statute.

Appellees advance several other contentions which require only brief discussion. They argue, citing *Guaranty Trust Co.* v. *United States,* 304 U. S. 126, that the United States, by seeking affirmative relief in a state court, subjects itself to all the incidents of state law which govern other suitors. See Hart & Wechsler, The Federal Courts and the Federal System 1112. However, we need go no farther than the *Guaranty Trust* case to uncover one of the several special rules which favor the United States in preference to other plaintiffs—the rule that the United States is not subject to local statutes of limitations. See *United States* v. *Summerlin,* 310 U. S. 414. Other such rules, applicable in both federal and state courts, can be found in 28 U. S. C. §§ 2404, 2405, 2407, 2408, 2413. Furthermore, the present proceedings were not initiated by the United States but by appellee insurance company when it joined the United States pursuant to § 2410.

Appellees also point to the first sentence of § 2410 (c)— "[a] judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens . . . held by the United States as may be provided . . . by the local law of the place where the property is situated." The contention is that this sentence governs all the succeeding language in § 2410 (c). However, this construction would render the suceeding language nugatory. The more rational interpretation is that the propositions following the first sentence in § 2410 (c) were designed as qualifications on the first sentence. This thesis gains force from the fact that the sentence setting out the United States' redemption privilege in § 2410 (c) previously was preceded by the words *"And provided further."* 46 Stat. 1529. This phrase was eliminated in the 1948 revision of the Federal Judicial Code but the

Reviser's Note indicates that no substantive changes were intended. 28 U. S. C. A. § 2410.

Therefore, the judgment of the Supreme Court of Kansas must be reversed and the case remanded with instructions to order the issuance of a certificate of redemption to the United States in accordance with its tender made in the District Court. However, in case the mortgagors wish to redeem in turn from the United States—a procedure in which the United States has acquiesced—we intimate no opinion as to the amount due the United States. The question whether the United States is entitled to payment of its claims in full upon redemption by the mortgagors or only to such debts as have been declared liens by the state courts is one to be decided according to Kansas law. Cf. *First National Bank & Trust Co.* v. *MacGarvie,* 22 N. J. 539, 547, 126 A. 2d 880, 885.

*Reversed and remanded.*