**UNITED STATES of America**
v.
**GLENDALE NURSING HOME.**
Lawrence J. Peterson, t/a Peterson Construction Company, Judgment Creditor, Appellant.
No. 15413.

United States Court of Appeals Third Circuit.

Argued Oct. 19, 1965.

Decided Jan. 27, 1966.

Frank J. Ferry, Atlantic City, N. J., for appellant.

Robert N. McAllister, Jr., Atlantic City, N. J., for appellee.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this dispute over the ownership of a portion of a sum of money, the only real difficulty arises from the misdirection which would occur if appellant's erroneous conception of the facts was to be accepted. His contention is that the problem is one concerning two creditors on an equal footing and that, as he was the first to levy upon the property, he takes precedence over appellee. His major premise is simply contrary to the fact.

The total money involved is $4,748.62. Originally this was to have been paid by the Atlantic County (New Jersey) Welfare Board on or about February 1, 1965 to the Glendale Nursing Home and/or its apparent successor Skyline Convalescent Center [1] for the maintenance and treatment of certain county welfare patients for whom the home was caring at the county's expense. $3,864.93 of that money was an advance to take care of the services to named patients for the then about to start month of February. $883.-69 was for maintenance and treatment rendered during the just past month of January.

Pursuant to a judgment obtained by appellant against Glendale, the sheriff, on January 29, 1965 levied on funds in the hands of the Welfare Board which the latter had expected to turn over to Glendale and/or its said successor, as set forth above, and received a check from the board payable to himself as sheriff in the amount of $4,748.62. A receiver for the home had been appointed by the federal district court on January 28,

1. From the scant confusing record, there is at least grave doubt that Glendale Nursing Home functioned at all after January 23, 1965. It would seem to have been taken over on that date by new ownership and given a new name, Skyline Convalescent Center.

1965. He was directed to take immediate possession of it, to manage and control it, etc.

If the money was a fund to which the judgment debtor Glendale was entitled by reason of a debt owed it by the County Welfare Board this court should sustain appellant's theory that he had made a valid levy and should therefore receive the full amount of the check. But here what appellant urges in fact is that a creditor may levy upon an expected advance in the hands of his debtor's customer at a time when obviously it was impossible for the debtor to perform the function for which the advance was to be made. The impossibility was created when the federal receiver was appointed and took control and possession of the home. For this reason, Chief Judge Madden, in his order, directed that the portion of the check covering payment for the services which had been rendered by Glendale ($883.69) be paid over to appellant as having been properly levied upon and that the balance of $3,864.93, admittedly an advance for future treatment and care, be paid over to the receiver for the February 1965 services actually furnished by him as such receiver for the account of the Welfare Board.

The relationship between the nursing home and the County Welfare Board was purely contractual. Performance by the home for February 1965, of necessity had not, at the time of levy, even begun. It is not denied that the Board's method of advancing sufficient cash to the home to provide the maintenance of its wards for the following month was clearly to help make sure that the home would have the financial resources necessary to do just that. On the date of the check's issuance, the Board owed the home solely for some January service. Less the payment of the January balance, the money involved was definitely in consideration of the future February treatment and care. As we have seen the home was taken over by the receiver in the latter part of January. In that state of affairs the agreement for February could not be carried out by Glendale or its apparent successor, Skyline Convalescent Center. That agreement for February, still in its executory stage, was assumed by the receiver and completely performed by him.

For appellant to prevail with respect to the February money, he had to show the existence of a debtor-creditor relationship between the Board and Glendale with reference to that sum. 1 Williston on Contracts Sec. 11, 3rd ed. 1957. In an effort to avoid the plenary circumstance that the Board did not owe Glendale anything for February, appellant refers to the full amount of the check as an " * * * unrestricted disbursement of funds to the judgment debtor." This is directly contrary to the written commitment on the invoice which had to be and was executed for Glendale, approved "February 1965" by the Board and which reads in pertinent part "This is to certify that the described patient care will be provided this month * * *." No check or checks for the balance of January 1965 and the advance for February 1965 were ever made out by the Board to the order of Glendale or Skyline Convalescent Center or both. The only check of the Board in the premises was made to the order of the sheriff on February 1, 1965, covering both amounts. The name of the institution in the invoice above referred to meanwhile had been changed from "Glendale Nursing Home" to "Skyline Convalescent Center". This seemingly happened on or after January 25th following notification to the Board of the change in the home ownership and name. The Welfare Board of course erred badly by including in its check to the sheriff its intended February advance to the home; also as the record stands, it is possible that the judgment debtor Glendale had not even fulfilled its entire contract for January. However, as we view the over all picture, there is no need of further pursuing that phase of the matter.

It is conceded that the United States stands in the shoes of the mortgagee by virtue of an assignment to the Federal Housing Administration of a mortgage which the latter insured pursuant to 12 U.S.C. § 1713(g), (k) and which it is seeking to foreclose. In this type of situation, as to priority of creditors, New Jersey law governs. United States v. John Hancock, etc. Ins. Co., 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960); United States v. Brosnan, 264 F.2d 762 (3 Cir. 1959), affd. 363 U.S. 237 (1960).

In New Jersey when a receiver is appointed upon application of the mortgagee, the receiver is entitled to all rents, issues and profits of the particular property which shall accrue from the date of his appointment. Hoboken Bank for Savings v. Clinton Realty Corp., 138 N.J.Eq. 271, 48 A.2d 298 (1946), affd. 139 N.J.Eq. 587, 52 A.2d 698 (1947); Bardaracco v. Gatti Paper Stock Corp., 114 N.J.Eq. 551, 169 A. 281 (1933). The receiver before us was appointed on January 28, 1965. The sheriff did not obtain the Welfare Board check until February 1, 1965. There is no pretension that the Board was bound to pay in advance for the home's services. The obligation of the Board could not be said to have accrued until the home had performed its services in the month of February. Possession and control of the home by Glendale or Skyline had been terminated on the preceding January 28th. The successor receiver performed the February services and was rightly compensated therefor by the so earmarked advance money. Appellant Peterson has utterly failed to show the existence of a debt between Glendale and the Welfare Board so as to fairly uphold his seizure of that money.[2]

We conclude that the order of the district court was just and right. It will be affirmed.

---

2. All amounts paid as old age assistance are exempt "from levy and sale, garnishment, attachment, or any other process whatsoever * * *" under Chapter 7, Article 2 of Title 44 of the Revised Statutes of New Jersey, N.J.S.A. 44:7–35 (1936). Under more recent legislation indigent aged are entitled to medical assistance under Chapter 7, Article 5 of the Revised Statutes, N.J.S.A. 44:7–76 (1962). Medical assistance is administered in accordance with Chapter 7, Article 5 of the Revised Statutes with cer-tain sections thereof excepted, N.J.S.A. 44:7–79. Section 44:7–35 is not one of the exceptions. It would appear therefore that the payments for medical assistance in this case, yet unearned, in the hands of the Atlantic County Welfare Board, were intended to be insulated against garnishment thus adding to the force of the argument that appellant, under any circumstances, is not entitled to the February money in the hands of the County Welfare Board.