**FEDERAL DEPOSIT INSURANCE CORPORATION**

v.

**George THOMSON, Sr.**

**Civ. A. No. 89–0392–L.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Dec. 3, 1989.

Bobby D. Tucker, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, La., for Federal Deposit Ins. Corp.

James R. Leonard, McBride, Foret, Rozas & Leonard, Lafayette, La., for Thomson.

## RULING

NAUMAN S. SCOTT, District Judge.

Before the court is plaintiff Federal Deposit Insurance Company's (FDIC) motion for summary judgment on the issue of its right to redeem the property on Long Street in Lafayette, Louisiana purchased by the defendant at Sheriff's sale. The motion is opposed by the defendant, George Thomson, Sr.

Basically, the facts are as follows. On February 17, 1988, Thomson purchased the property for $25,000.00 at a judicial sale held to satisfy a first lien held by Louisiana Savings Bank. Thomson also paid $14,-000.00 directly to his son, George Thomson, Jr., as a commission or "finder's fee" for

the property. Apparently unbeknownst to Thomson, the FDIC in its corporate capacity held a subordinate mortgage on the property which arose from its receivership of the assets of American Bank, a defunct FDIC institution. On February 14, 1989 pursuant to 28 U.S.C. § 2410(c), FDIC tendered a redemption amount to Thomson of $26,500.00, which was rejected. The FDIC filed this suit for declaratory judgment, asserting its entitlement to exercise its alleged redemption rights against the property. The tendered money has been placed in trust with the Clerk of Court.

The redemption powers of the FDIC under 28 U.S.C. § 2410 are broad. This statute provides in relevant part:

(c) * * * Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem....

(d) In any case in which the United States redeems real property under this section ... the amount to be paid for such property under this section shall be the sum of—.

(1) the actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being enforced shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale),

(2) interest on the amount paid (as determined under Paragraph 1)) [sic] at 6 percent per annum from the date of such sale, and

(3) the amount (if any) equal to the excess of (A) the expenses necessarily incurred in connection with such property, over (B) the income from such property plus (to the extent such property is used by the purchaser) a reasonable rental value of such property.

■ In *United States v. John Hancock Mutual Ins. Co.*, 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960) the Supreme Court addressed the application of § 2410(c). The Court stated that in situations where the redemption section applies, inconsistent state law provisions must fall under the Supremacy Clause of the United States Constitution. 364 U.S. at 305, 81 S.Ct. at 4. Earlier, in *United States v. Brosnan*, 363 U.S. 237, 241, 80 S.Ct. 1108, 1111, 4 L.Ed.2d 1192 (1960) the Court recognized that Congress possessed the power to establish rules which may interfere with state-created property rights. Therefore, any contention by the defendant that Louisiana property rights are violated by redemption in this case is unfounded. It is clear that if the defunct bank had a valid subordinate lien on the property, then the FDIC can redeem it here.

The defendant has made several specific objections to the application of § 2410(c) to the mortgage and redemption at hand.

First, Thomson suggests that the FDIC's lien on the property is defective and therefore the FDIC has no redemption rights. Thomson's objection to the mortgage is two-fold. First, he contends that the collateral mortgage note made in July 1982 was not pledged as security for the hand note now held by the FDIC. Second, Thomson claims that if the mortgage is valid, it concerns only one-half of the subject property. Both contentions are untenable.

■ The hand note held by the FDIC secures a loan made by American Bank to Oreco III in February 1984. Part of the collateral pledged to secure this loan was the Collateral Mortgage created in July 1982, secured by the property at issue. The original pledge agreement, signed in August 1982, which Oreco III made with American Bank pledged the property to secure any debts which were contemporaneously in existence, or which arose in the future. As the FDIC points out, the Collateral Mortgage was "continuously pledged" and thus obviated the need to repledge the mortgage to secure the hand note, even though repledging might normally be required. Therefore, there is no doubt that the FDIC's hand note is secured by the property now sought to be redeemed. The mortgage held by the FDIC is not defective.

■ The second issue to the validity of the mortgage is whether FDIC possesses a

mortgage to the entire property or only the half-interest. This issue focuses on the "Act of Correction" dated August 2, 1982, which Thomson purports indicates that Mr. Evans could only have pledged his undivided half-interest in the property to American Bank, while his ex-wife reserved her share of the property. If this argument were correct FDIC could currently possess only a half-interest in the property.

We find the Act of Correction did not divest American Bank, and now the FDIC, of a complete mortgage. Both Mr. and Mrs. Evans owned a half-interest in the property following their divorce in December 1981. Following the creation of the mortgage, Mrs. Evans performed the Act of Correction to limit her liability to the half-interest which she had in the property, and to protect her from exposure should the property be insufficient to satisfy a debt secured by the property. This finding is supported by the reference to La.Civ. Code Article 2347, which indicates that the Evans intended to concur to encumber their immovable property which had not yet been partitioned following their divorce. Had the parties desired to indicate that only a half-interest in the property was being pledged, clearly the original or the correction would have so stated. Therefore, the lien which the FDIC holds on the property is for the entire property.

Next, Thomson claims that since he was not given notice of the presence of the FDIC's lien, he was a good-faith purchaser and thus the government can not invoke its redemption rights. In support of this proposition Thomson offers Louisiana law, and again points to the supremacy of § 2410 when contrary to state law. There is no requirement stated in § 2410(c) calling for specific notice to parties that the government holds a lien on a property in order to redeem the property. Louisiana law is irrelevant to this issue. *John Hancock Mutual Ins. Co.* and *Brosnan, supra.*

We recognize the apparent inequity associated with our ruling in this case. Unfortunately, Congress has created a rule to protect the FDIC and its troubled banking system, and this rule we must enforce within its intent.

Accordingly, summary judgment is GRANTED in favor of the FDIC on the issue of redemption, the sole issue which plaintiff has motioned us to decide.