**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

QUALITY LOAN SERVICE CORP.,
        *Petitioner,*

v.

24702 PALLAS WAY, MISSION
VIEJO, CA 92691, All Claimants to
Surplus Funds After Trustee's Sale
of Real Property Located at,
        *Respondent,*

    and

MARK V. FRANZEN; DEBRA A.
FRANZEN,
        *Claimants-Appellants,*

    and

UNITED STATES OF AMERICA,
        *Claimant-Appellee.*

No. 08-56181

D.C. No.
2:07-cv-07128-CAS-
VBK

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
August 30, 2010—Pasadena, California

Filed March 24, 2011

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and Ronald M. Gould,
Circuit Judges.

Opinion by Judge O'Scannlain

3991

## COUNSEL

David P. Pruett, Carroll, Kelly, Trotter, Franzen & McKenna, Long Beach, California, argued the cause for the appellants and filed briefs.

John Schumann, Attorney, Tax Division, Department of Justice, Washington, D.C., argued the cause for the appellee and filed a brief. With him on the brief were John A. DiCicco, Acting Assistant Attorney General, and Thomas J. Clark, Attorney, Tax Division, Department of Justice, Washington, D.C.; and Thomas P. O'Brien, United States Attorney, Central District of California, Los Angeles, California.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must determine the priorities of federal tax liens and a state-law lien in this dispute over surplus proceeds from a nonjudicial foreclosure sale.

### I

### A

In 1999, Ted and Karen Chapin executed a deed of trust secured by real property located at 24702 Pallas Way, Mission Viejo, California ("subject property"). Quality Loan Service Corporation ("Quality") was named the trustee.

Between January 2001 and April 2005, the Internal Revenue Service ("IRS") recorded in the Orange County Clerk-Recorder Department eight tax liens totaling $182,554.50 on the subject property due to Ted Chapin's failure to pay federal taxes.[1] In June 2005, Mark and Debra Franzen recorded in the

---

[1]"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States

Orange County Clerk-Recorder Department an abstract of judgment against Ted Chapin for $100,000, creating a judgment lien on the subject property.[2]

After the Chapins defaulted on the deed of trust, Quality sold the subject property in a nonjudicial foreclosure sale in October 2006. The sales price was $570,000, resulting in surplus proceeds of $233,942.15. In an effort to distribute this sum, Quality identified twenty-seven junior liens on the subject property, including the IRS liens and the Franzens' judgment lien, and determined their order of priority. After Quality notified the lienholders of the surplus proceeds and order of priority, the Franzens disputed the prioritization of the liens.

B

To resolve the priority dispute, Quality filed a "petition and declaration regarding unresolved claims" in the Orange County Superior Court on August 23, 2007, pursuant to California Civil Code section 2924j(c). Quality deposited $230,439.56 with the superior court, having deducted its expenses and fees from the surplus proceeds. The day prior to filing the declaration, Quality sent potential claimants notice of its intent to deposit the funds in the superior court. *See* Cal. Civ. Code § 2924j(d). The notice specified, in bold print, "[I]f you claim an interest to the funds to be deposited you must file a claim with the court within thirty (30) days from the date of this notice."

---

upon all property and rights to property, whether real or personal, belonging to such person." I.R.C. § 6321. Such lien "shall arise at the time the assessment is made and shall continue until the liability . . . is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322.

[2]"[A] judgment lien on real property is created . . . by recording an abstract of a money judgment with the county recorder." Cal. Civ. Proc. Code § 697.310(a). Such lien "attaches to all interests in real property in the county where the lien is created." *Id.* § 697.340(a).

The Franzens filed a claim for $123,233.85 on September 21, 2007. The superior court held a hearing on October 2, 2007, and determined that Quality had not exercised due diligence in attempting to determine the priority of the claims. The court continued the hearing to November 6, 2007 to allow Quality to submit an additional declaration regarding due diligence. On October 22, 2007, the IRS filed a claim for $265,501.73.

On October 31, 2007, before the superior court hearing was scheduled to take place, the United States removed the action to the United States District Court for the Central District of California. The Franzens filed a motion to remand, which was denied by the district court. The United States and the Franzens filed cross-motions for summary judgment on the issue of the priority of the competing claims to the surplus proceeds. The district court granted the United States' motion and denied the Franzens' motion. This appeal timely followed.

II

The Franzens first contend that the district court erred in denying their motion to remand.

A

**[1]** The United States invoked 28 U.S.C. § 1444 as its basis for removing the action. Section 1444 provides that "[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States." 28 U.S.C. § 1444. Section 2410, in turn, provides that "the United States may be named a party in any civil action or suit . . . in any State court having jurisdiction of the subject matter[ ] . . . of interpleader . . . with respect to[ ] real or personal property on which the United States has or claims a mortgage or other lien." *Id.* § 2410(a).

The Franzens argue that the action was not an interpleader within the meaning of section 2410 and, hence, not removable under section 1444. The Franzens focus on the fact that California Civil Code section 2924j distinguishes between filing a "declaration" and an "interpleader."[3] Because Quality filed a "declaration," the Franzens reason that the action could not have been an "interpleader."

Whether an action is removable, however, "turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941). The nomenclature in California Civil Code section 2924j is therefore irrelevant to our inquiry; the question is whether the action initiated by Quality was an "interpleader" within the meaning of the removal statute.

We find instructive the approach of the Fifth Circuit in *Hussain v. Boston Old Colony Insurance Co.*, 311 F.3d 623 (5th Cir. 2002). There, the court held that a state court action was an interpleader within the meaning of section 2410 because "the substantive posture of the parties mirrored the substance of an action in interpleader," even if "the motion practice of the parties did not use the same labels as actions taken to initiate an interpleader proceeding." *Id.* at 633.

**[2]** Interpleader developed as an equitable remedy to avoid "the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty." *Texas v. Florida*, 306 U.S. 398, 405 (1939). In a traditional action in interpleader, "the plaintiff asserted no interest in the debt or fund, the amount of which he placed at the disposal of the

---

[3]For example, subsection (b) provides that if the trustee has failed to determine the priority of claims, the trustee may either (1) file a declaration of the unresolved claims and deposit the funds with the clerk of court pursuant to subsection (c), or (2) file an interpleader action pursuant to subsection (e). Cal. Civ. Code § 2924j(b).

court and asked that the rival claimants be required to settle in the equity suit the ownership of the claim among themselves." *Id.* at 406. Hence, the *Hussain* court held that when a state court action brought together several parties with competing claims to a fund possessed by a disinterested stakeholder, the action was an interpleader within the meaning of section 2410, notwithstanding that the action was not called an interpleader in the state court, and the funds were never deposited with the court. 311 F.3d at 633-34.

**[3]** Here, Quality disclaimed any interest in the surplus proceeds, deposited them with the state court, and petitioned the court to resolve the competing claims. Even if California law does not denote this procedure an "interpleader," it was functionally equivalent to an action in interpleader and therefore was an interpleader within the meaning of section 2410. Consequently, the action was removable pursuant to section 1444.

### B

**[4]** The Franzens also contend that the United States failed to remove the action within the thirty-day window provided under 28 U.S.C. § 1446(b).

Section 1446(b) provides, in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). The Supreme Court has explained that "a named defendant's time to remove is triggered by simulta-

neous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, *but not by mere receipt of the complaint unattended by any formal service*." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (emphasis added). Consequently, actual notice of the action is insufficient; rather, the defendant must be "notified of the action, and brought under a court's authority, by formal process," before the removal period begins to run. *Id.* at 347.

[5] The procedural requirements for "actions in the State courts" that "involv[e] liens arising under the internal revenue laws" are set forth in 28 U.S.C. § 2410(b).[4] Section 2410(b) provides that "service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought" (or upon his designee) and "by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia." Quality indisputably failed to comply with these requirements when it mailed a notice of the action to the IRS office in Laguna Niguel and later e-mailed a notice of the action to the United States Attorney's Office for the Central District of California. Because these steps were insufficient to constitute the formal process prescribed in section 2410(b), they did not start the removal clock, regardless of whether they provided the United States with actual notice of the action.[5] Consequently, the notice of removal was not untimely.

---

[4]The Franzens contend that service of process on the United States is governed by California procedural rules. We disagree because 28 U.S.C. § 2410(b) preempts those rules in interpleader actions in which the United States is a defendant. *See* U.S. Const. art. VI, cl. 2; *cf. Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("By virtue of the Supremacy Clause, the [Hague Service] Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." (citation omitted)).

[5]That Quality failed properly to serve the United States did not vitiate the United States' waiver of sovereign immunity. As the Supreme Court

### III

The Franzens also contend that the district court erred in granting the United States' motion for summary judgment.

### A

The Franzens argue that because the United States failed to file a claim to the surplus proceeds "within 30 days from the date of the notice" of Quality's intent to deposit the surplus funds in the superior court, Cal. Civ. Code § 2924j(d), the Franzens' lien has priority over the tax liens. We disagree.

[6] First, the United States was not required to file a claim within thirty days of the notice. In any state court interpleader involving property on which the United States claims a lien, "the United States may appear and answer, plead or demur within *sixty days*" after being served in the manner prescribed by federal law. 28 U.S.C. § 2410(b) (emphasis added). The federal statute providing for a sixty-day period preempts the state statute to the extent the latter is inconsistent. *See United States v. John Hancock Mut. Life Ins. Co.*, 364 U.S. 301, 304-05 (1960). Moreover, as we have already determined, the notice mailed by Quality was not served pursuant to the requirements of section 2410(b). Consequently, the claim was not untimely.[6]

---

has explained, "the manner and timing of serving process" on the United States "are generally nonjurisdictional matters of 'procedure' " that do not condition the waiver of sovereign immunity. *Henderson v. United States*, 517 U.S. 654, 656 (1996).

[6]Even if the defective service on August 22, 2007 were sufficient to trigger the sixty-day period under section 2410(b), the claim filed by the United States on October 22, 2007 would still be timely. The sixtieth day, October 21, 2007, was a Sunday, allowing the United States to file the claim the next business day, Monday, October 22, 2007. *See Union Nat'l Bank of Wichita v. Lamb*, 337 U.S. 38, 40-41 (1949); *United States v. Cia Luz Stearica*, 181 F.2d 695, 696 (9th Cir. 1950); *accord* Cal. R. Ct. 1.10(a).

**[7]** Second, the priority of a federal tax lien does not depend on the vagaries of when the United States files a claim in state court relative to a competing claimant. *See Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997) ("As the entire point of an interpleader action is to resolve then competing rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position."). Rather, "[t]he priority of claims to the res in an interpleader action must normally be determined at the time the action is initiated, and cannot be altered by events after the interpleader fund becomes viable." *Id.* at 1371. The precise timing of the claims filed in the state court action therefore has no bearing on the priority question.

B

Finally, the Franzens argue that federal law does not govern whether the federal tax liens had priority over their judgment lien. Again, we disagree.

**[8]** "*[F]ederal law* governs the relative priority of federal tax liens and state-created liens." *Aquilino v. United States*, 363 U.S. 509, 514 n.5 (1960) (emphasis added); *see also Bus. Title Corp. v. Div. of Labor Law Enforcement*, 553 P.2d 614, 618 (Cal. 1976) ("It is now well settled and indeed beyond argument that federal law rather than state law determines the priority of competing liens where one of them is a tax lien asserted by the United States."). "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.' "**7** *United States v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954) (internal quotation marks omitted)).

---

**7**We note that state law is identical to federal law in this respect. *See DMC, Inc. v. Downey Sav. & Loan Ass'n*, 120 Cal. Rptr. 2d 761, 765 (Ct. App. 2002) ("In California, lien priority is determined by the 'first in time, first in right' approach." (citing Cal. Civ. Code § 2897)).

**[9]** "As a general rule, a lien in favor of the United States is not disturbed by a nonjudicial sale of the property." *White-side v. United States*, 833 F.2d 820, 822 (9th Cir. 1987) (citing I.R.C. § 7425(b)). "There is an exception, however, if the IRS is given notice of the sale in accordance with IRS regulations." *Id.* (citing I.R.C. § 7425(c)(1)).[8] "A nonjudicial sale of property is made 'subject to and without disturbing' federal tax liens if (1) the federal tax liens were filed more than 30 days before the sale, and (2) notice of the sale is *not* given to the IRS in accordance with § 7425(c)(1)." *Orme v. United States*, 269 F.3d 991, 994 (9th Cir. 2001) (quoting I.R.C. § 7425(b)(1)) (emphasis added).

**[10]** Here, the United States' tax liens on the subject property were "first in time" relative to the Franzens' judgment lien, which was recorded after the last tax lien was recorded.[9] The federal tax liens were filed more than thirty days before the nonjudicial foreclosure sale, and there is no evidence in the record that the IRS received notice of the sale at least twenty-five days prior to the sale pursuant to section 7425(c)(1).[10] Accordingly, the federal tax liens survived the foreclosure sale and attached to the surplus proceeds. *See Phelps v. United States*, 421 U.S. 330, 334-35 (1975). The Franzens' judgment lien also survived the sale, attaching to the surplus proceeds and remaining junior to the United

---

[8]Such notice must be given "in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale." I.R.C. § 7425(c)(1); Treas. Reg. § 301.7425-3.

[9]The United States properly filed notices of its tax liens in the office of the recorder of Orange County. *See* I.R.C. § 6323(a); Cal. Civ. Proc. Code § 2101(b).

[10]The Franzens argue that a notice sent by Quality to the IRS *after* the sale pursuant to California Civil Code section 2924j(a) satisfied the requirements of section 7425(c)(1). We disagree. Section 7425(c)(1) makes clear that notice must be provided at least twenty-five days *before* the sale. Moreover, the notice must be "in accordance with regulations prescribed by the Secretary [of the Treasury]." I.R.C. § 7425(c)(1); *see also* Treas. Reg. § 301.7425-3(a), (d). The state-law notice did not suffice.

States' liens. *See Caito v. United Cal. Bank*, 576 P.2d 466, 469 (Cal. 1978) ("Following a foreclosure sale and satisfaction of the obligation of the creditor who forecloses, subordinate liens against the foreclosed property attach to the surplus proceeds in order of their priority."). Because the federal tax liens had priority over the Franzens' judgment lien at the time the action commenced, the district court properly granted summary judgment in favor of the United States.[11]

## IV

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**[12]

---

[11]We decline to consider the Franzens' belated challenge to the amounts claimed by the United States, raised for the first time in the reply brief. *See United States v. 191.07 Acres of Land*, 482 F.3d 1132, 1137 n.2 (9th Cir. 2007).

[12]The Franzens' motion for judicial notice is GRANTED.